UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No.: 1:24-CV-20888-KMM

RAZIEL OFER,
    Plaintiff,

vs.

STEPHEN T. MILLAN, individually,
MILLAN LAW FIRM PA, a Florida for Profit Corporation,
RONIEL RODRIGUEZ IV, individually,
RONIEL RODRIGUEZ IV PA, a Florida for Profit Corporation,
AJAR HOLDINGS LLC, a foreign limited liability company,
STEVEN E. GURIAN, individually,
SANTIAGO ELJAIEK, III, individually,
MARIN, ELJAIEK, LOPEZ, MARTINEZ PL, a Florida
Professional Limited Liability Company,
STUART R. KALB, individually,
ERIC SCHIGIEL, individually,
OPUSTONE, a Florida for Profit Corporation.
    Defendant(s).
_____/

FILED BY _____ D.C.
SEP 18 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## PLAINTIFF OFER'S RESPONSE IN OPPOSITION TO DEFENDANTS' SANTIAGO ELJAIEK, III'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (CORRECTED) WITH PREJUDICE

Plaintiff, Raziel Ofer ("Ofer" or "Plaintiff"), as a self-represented litigant, responds to the Defendant's motion to dismiss the Second Amended Complaint (Corrected), in opposition to the grant of any relief under said motion. In response, Ofer states the below points in support:

Summary Basis Alleged For Dismissal

Defendants Santiago Eljaiek, III filed his motion to dismiss the Second Amended Complaint (Corrected)("Corrected Complaint") and alleged as the basis for dismissal that the Defendants tangential connection to the matter in his previous capacity as a managing

partner of Marian, Eljaiek, Lopez & Martinez, P.L. ("MARIN PL") which he is no longer associated with somehow absolves him of liability. He claims that his previous association with RODRIGUEZ terminated in 2006 and that his role ceased with MARIN PL as of January 1, 2022. Due to this, there is nothing to substantiate a direct or actionable involvement with the conduct or Defendants in this matter which is complained of.

Standard of Review For Motion To Dismiss

To survive a motion to dismiss, a pleading must set out facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Consequently, a plaintiff must imbue its pleading with "enough heft to show that the pleader is entitled to relief." *Id.* at 557, 127 S.Ct. 1955. And plausibility is the test for that heft: The "well-pled allegations must nudge the claim 'across the line from conceivable to plausible." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009)(quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). To do so, the complaint must contain "more than labels and conclusions," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, and enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Plaintiffs receive the benefit of reasonable factual inferences, "unwarranted deductions of fact are not admitted as true." *Aldana v. Del Monte Fresh Produce, N.A. Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, we do not credit bare legal conclusions. See *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Failure to State A Claim For Conversion And Theft

Defendant allege that the Corrected Complaint fail to state a proper claim of

conversion against them. Specifically, Defendants alleged that the causes of action for conversion and theft has no nexus to him because he stopped having a association with RODRIGUEZ in 2006 and his managerial functions at MARIN PL ceased on January 1, 2022. In Florida, a claim for conversion entails an unauthorized act that deprives a person of his property permanently or for an indefinite time. *Shelby Mut. Ins. Co. v. Crain Press, Inc.*, 481 So.2d 501, 503 (Fla. 2d DCA 1985); see also *Marine Transp. Servs. Sea-Barge Group, Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1140 (11th Cir. 1994)("In Florida, the tort of conversion is an unauthorized act which deprives another of his property permanently for an indefinite time.") "A conversion occurs when a person who has a right to possession of property demands the property's return and the demand is not or cannot be met." *Id.* Defendants' attempt to evade the issue of conversion by stating that they never had possession of the property, but they disregard the two factual components which can be gleaned from the four corners of the Corrected Complaint.

First, the Defendant was alleged to be a part of a conspiracy which originated prior to the filing of the case in 2019 when the Defendant was still associated with MARIN PL. The Defendants' received information from Co-Defendants RODRIGUEZ, RODRIGUEZ PA, MILLAN, MILLAN, PA and KALB when they were recruited by the CO-Defendants in order to ***file and prosecute*** the OPUSTONE action. ***See Corrected Complaint at paragraph 31.*** The allegation, which must be taken as true, places the Defendant within the circle of criminals who worked to deprive Ofer of the property and *the benefits derived from the property* such as the rental income. The conspirators worked together in a scheme to deprive Ofer of the property with the intent to retain the property and its associated benefits, such as the income derived therefrom, for an indefinite period of time, converting

it all to their own use. The essential element of conversion is the depravation of property or benefit against the rights of the owner of the property or benefit.

More specifically, "Conversion is an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." *Warshall v. Price*, 629 So. 2d 903, 904 (Fla. 4th DCA 1993) (internal quotation marks omitted). "[T]o state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011). The essence of an action for conversion is "not the acquisition of the property of the wrongdoer, **_but the wrongful deprivation of a person of property to the possession of which he is entitled_**." *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 33 So. 2d 858, 860 (1948). Thus, it is the conduct of the Defendants' actions exerting dominion over the property and derived benefits, as a participant in the conspiracy, which is the subject of the conversion.

Alternatively, if Defendant cannot be held to account for conversion directly, he most certainly can be held to account for aiding and abetting the other co-Defendants in the conversion of OFER's property and the benefits derived therefrom. The allegations of the Corrected Complaint most definitely point to the assistance of the Defendant in a conspiracy to deprive OFER of the property and the benefits derived from it. "[T]he majority of case law, including that in Florida, recognizes a cause of action for aiding and abetting common law torts, such as breach of fiduciary duty." *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991); see also *Ft. Myers Dev. Corp. v. J.W. McWilliams Co.*, 97 Fla. 788, 122 So. 264, 268 (1929)(recognizing that liability may attach for "aiders and abettors of fraudulent promoters of corporations"); *Roos v. Morrison*, 913 So. 2d 59,

68 n.1 (Fla. 1st DCA 2005)("Florida courts recognize the 'acting in concert' basis for joint and several liability."). To state a claim for aiding and abetting a tort in Florida, a plaintiff must allege: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 Fed. Appx. 904, 906 (11th Cir. 2012)(applying Florida law). Likewise, the Second Restatement of Torts provides that: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]" Restatement (Second) of Torts § 876 (Am. L. Inst. 1979). The Florida Supreme Court has recognized that codefendants can be held jointly liable for conversion. See *Wilson Cypress Co. v. Logan*, 120 Fla. 124, 162 So. 489, 490 (1935). And, in *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1325–26 (M.D. Fla. 2013), the federal district court held that the plaintiffs had sufficiently pleaded a claim under Florida law for aiding and abetting conversion.

Ofer alleged the primary wrongdoing by Defendants RODRIGUEZ, RODRIGUEZ PA, KALB, MILLAN and MILLAN PA. The Defendants were alleged to have knowledge of the scheme through the dissemination of the information by MILLAN and MILLAN PA and the recruitment of the Defendant by RODRIGUEZ, RODRIGUEZ PA and KALB due to the Defendants MARIN PL and ELJAIEK's ***prior business dealings*** with RODRIGUEZ and RODRIGUEZ PA. Finally, OFER alleged that the Defendant gave substantial assistance in the form of the filing of the OPUSTONE action and prosecuting it to final

judgment to facilitate the conversion of the property and the benefits derived from it. The Defendant had a respondent superior liability as a manger over GURAIN an his conduct here. As a pro se filer, the complaint should be read liberally and the complaint alleges a common law claim for *aiding and abetting* conversion under Florida law at a minimum. The Court should accept the Corrected Complaint alleges and properly states a cause of action for aiding and abetting conversion, and the same goes for theft based on the same principles, or alternatively, leave should be granted to amend the Corrected Complaint for the causes of action for aiding and abetting conversion and theft, and for civil conspiracy, as the allegations are clear that is what OFER is alleging and the causes of action claim, albeit the causes of action are not titled as such. As the Correct Complaint alleges such causes of action, the Correct Complaint cannot be dismissed with prejudice.

Failure To State A Claim For Unjust Enrichment

Defendant's reason for opposing the inclusion of the cause of action for unjust enrichment is again the lack of tangential connection to the conduct of other conspirators which state that OFER did not convey title to the property to the Defendants nor confer any benefits on the Defendants. This reasoning must fail. "The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So.2d 876, 879 (Fla. 3d DCA 1996). "At the core of the law of restitution and unjust enrichment is the principle that a party who has been unjustly enriched at the expense of another is required to make restitution to the other."

*Gonzalez v. Eagle Ins. Co.*, 948 So.2d 1, 3 (Fla. 3d DCA 2006).

As previously stated, the Defendant was alleged to be a part of the conspiracy to deprive OFER of his property and the benefits derived therefrom, e.g. the rental income. OFER participated in a settlement agreement with the Defendants OPUSTONE which did confer a benefit on the Defendants such as payments in settlement of the dispute. It later turns out the settlement agreement was nothing more than a device of the extrinsic fraud[1] portrayed by the Defendants to keep OFER from presenting his case through fraud and falsely claiming a compromise to get a tactical advantage. Further, the satisfaction of the judgment and the retention of the property and the benefits derived from the property, in inequitable. The judgement resulted in a liability to OFER of just over $105,000.00. The real property has a market value of $40 million. There is over $39 million in surplus equity. With the judgement being satisfied and the equity of that magnitude being present and not returned, it is without question that the Defendants were unjustly enriched. And the Defendant here aided and abetted in that conduct by allowing the conduct of GURAIN and permitting the matter to proceed to judgment in the OPUSTONE action.

More Than A Mere Casual Connection

The Defendant rests his arguments for failure to state a claim on presumptively casual connections which tie the participants together in this matter. Defendant previously had an association with RODRIGUEZ. When RODRIGUEZ and RODRIGUEZ PA obtained the improper and unethically disseminated information from MILLAN and

---

[1] "Extrinsic fraud involves conduct which is collateral to the issues tried in a case. . . . [T]his Court has defined extrinsic fraud as the prevention of an unsuccessful party [from] presenting his case, by fraud or deception practiced by his adversary; keeping the opponent away from court; falsely promising a compromise; ignorance of the adversary about the existence of the suit or the acts of the plaintiff; fraudulent representation of a party without his consent and connivance in his defeat; and so on." *Fair v. Tampa Electric Co.*, 158 Fla. 15, 18, 27 So. 2d 514, 515 (1946).

MILLAN PA, somehow MARIN PL became the counsel of record for OPUSTONE to cause the prosecution of the matter in state court. There is more than a casual connection here. as alleged in the Second Amended Complaint (Corrected), the prior relationship and "shared office space" between Defendant ELJAIEK and RODRIGUEZ was instrumental in the recruitment of MARIN PL and ELJAIEK to prosecute the matter. MARIN had no association with OPUSTONE as far representation in the five (5) years prior to the matter starting. Without this connection, there is nothing which would have had MARIN PL engaged in the matter. Simply put, RODRIGUEZ approached ELJAIEK as to getting him and MARIN PL involved in the matter. Indeed, ELJAIEK has a history of misrepresenting facts to hide his true conduct[2]. There would be no difference here for the self-serving statements that ELJAIEK has no part in this conduct when he was recruited here.

Conclusion

Based on the foregoing, the Defendants motion to dismiss the Corrected Complaint should be denied and this objection sustained based on the grounds asserted, or any other relief the Court deems appropriate.

/s/_____
Raz Ofer
c/o 3701 DeGarmo Lane
Coconut Grove, FL 33133
Raz.ofer2@gmail.com

---

[2] In 2016, the Florida Supreme Court found ELJAIEK had misrepresented a material fact about his conduct. A Bar complaint was filed against ELJAIEK for his notarization of a document containing a signature of a party who claimed that she did not make it. ELJAIEK stated that a party to a real estate conveyance was present when he notarized the document. In reality, the person was never present before him and he represented to the Florida Bar that he communicated with the complaining party to verify that she did, in fact, sign the deed when the complaining party denied that communication never occurred. As a result, ELJAIEK was reprimanded for the self-serving misrepresentation to the investigation of the Florida Bar.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __18__ day of September 2024, a true and correct copy of the foregoing was served by email on all parties of record as required by the Federal Rules of Civil Procedure.

/s/ _____
Raz Ofer
c/o 3701 DeGarmo Lane
Coconut Grove, FL 33133
Raz.ofer2@gmail.com