## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-20888-MOORE/Elfenbein

**RAZIEL OFER**,

Plaintiff,

v.

**STEPHEN T. MILLAN**, *et al.*,

Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON MOTIONS TO DISMISS AND MOTION FOR HEARING

**THIS CAUSE** is before the Court on five motions: (1) Defendant Steven E. Gurian

("Gurian"); Defendant Marin, Eljaiek, Lopez & Martinez, P.L. (the "Marin Law Firm");

Defendant Eric Schigiel ("Schigiel"); and Defendant Opustone ("Opustone")'s Motion to

Dismiss (the "Gurian Motion"), ECF No. [88]; (2) Defendant AJAR Holdings, LLC ("AJAR

Holdings"), Defendant Stuart R. Kalb ("Kalb"), Defendant Stephen T. Millan ("Millan"),

Defendant Millan Law Firm PA (the "Millan Law Firm"), Defendant Roniel Rodriguez IV

("Rodriguez"), and Defendant Roniel Rodriguez IV, PA (the "Rodriguez Law Firm")'s Motion

to Dismiss (the "First Rodriguez Motion"), ECF No. [93]; (3) AJAR Holdings, Kalb, Millan, the

Millan Law Firm, Rodriguez, and the Rodriguez Law Firm's Second Motion to Dismiss (the

"Second Rodriguez Motion"), ECF No. [95]; (4) Defendant Santiago Eljaiek, III ("Eljaiek")'s

Motion to Dismiss (the "Eljaiek Motion"), ECF No. [100]; and (5) *Pro se* Plaintiff Raziel Ofer's

Motion Requesting Hearing or, Alternatively, a Report and Recommendation (the "Motion for

Hearing"), ECF No. [119].  The Honorable K. Michael Moore referred this action to me "to take

all necessary and proper action as required by law regarding all pre-trial, non-dispositive matters

including discovery, and for a Report and Recommendation on any dispositive matters." *See* ECF No. [25].

For the reasons explained below, I **RECOMMEND** that: the Gurian Motion, **ECF No. [88]**; the First Rodriguez Motion, **ECF No. [93]**; and the Eljaiek Motion, **ECF No. [100]**, be **GRANTED**; the Second Rodriguez Motion, **ECF No. [95]**, be **DENIED**; and the Motion for Hearing, **ECF No. [119]**, be **DENIED AS MOOT**.

## I.      BACKGROUND

Plaintiff initiated this action on March 6, 2024 by filing a complaint against eleven defendants: Gurian, the Marin Law Firm, Schigiel, Opustone, AJAR Holdings, Kalb, Millan, the Millan Law Firm, Rodriguez, the Rodriguez Law Firm, and Eljaiek. *See* ECF No. [1]. In the almost ten months since then, Plaintiff has amended his complaint many times. *See* ECF No. [4]; ECF No. [54]; ECF No. [75].  The culmination of those amendments is the "Second Amended Complaint (Corrected)" (the "Final Amended Complaint"), *see* ECF No. [76], that Plaintiff filed on August 15, 2024, which is the operative one.

The Final Amended Complaint alleges that this Court has jurisdiction based on "diversity of citizenship" under 28 U.S.C. § 1332.  *See* ECF No. [76] at 3.  To support that jurisdictional basis, it alleges that Plaintiff is a citizen of the United Kingdom and a resident of London, England and that all six individual Defendants are citizens of the United States and residents of Florida.  *Id.* at 2–3.  It further alleges that two of the business entity Defendants (the Millan Law Firm and the Rodriguez Law Firm) are Florida for-profit organizations, two of the business entity Defendants (the Marin Law Firm and Opustone) are Florida for-profit limited liability corporations, and one business entity Defendant (AJAR Holdings) is a foreign limited liability company incorporated in Wyoming that in 2021 "sought authorization to transact business in

Florida." *Id.*  Finally, it alleges that all five business entity Defendants do business in Florida. *Id.*

The Final Amended Complaint asserts six claims. *Id.* at 27–41. Plaintiff brings three of those claims — conversion, unjust enrichment, and theft — against all eleven Defendants. *Id.* at 27–33.  Plaintiff's conversion, unjust enrichment, and theft claims are based on allegations that all eleven Defendants conspired to commit fraud against him with the goal of stealing two buildings in Miami Beach located at 1560 and 1568 Drexel Ave (the "Drexel buildings"). *See* ECF No. [4] at 5.  Plaintiff's companies formerly owned the Drexel buildings, and Plaintiff alleges they are worth more than $40 million. *See* ECF No. [4] at 5, 16–19. Specifically, Plaintiff alleges that Defendants "intentionally violated the terms of" a "settlement agreement" executed on April 8, 2021 to resolve a related state court lawsuit and that they did so "with the intent" to "deprive" him of the Drexel buildings and the benefits he should derive from them. *See* ECF No. [76] at 31; ECF No. [76-1] at 124–25.

Plaintiff brings the other three claims — leasehold enforcement, ejectment, and breach of contract — against only AJAR Holdings, Kalb, Rodriguez, and the Rodriguez Law Firm. *See* ECF No. [76] at 34–41.  Plaintiff's leasehold enforcement, ejectment, and breach of contract claims are based on allegations that Plaintiff owns a construction lien and a leasehold on the Drexel buildings; AJAR Holdings, Kalb, Rodriguez, and the Rodriguez Law Firm now own the Drexel buildings; and AJAR Holdings, Kalb, Rodriguez, and the Rodriguez Law Firm have neither paid Plaintiff anything toward what is owed on the construction lien and leasehold nor delivered possession of the Drexel buildings to Plaintiff.  *Id.* at 34–41.  In various groups, all eleven Defendants have moved to dismiss the Final Amended Complaint.  *See* ECF No. [88]; ECF No. [93]; ECF No. [95]; ECF No. [100].

### A.  Gurian Motion – ECF No. [88]

Defendants Gurian, the Marin Law Firm, Schigiel, and Opustone (the "Gurian Defendants") base their Motion to Dismiss primarily on their contention that Plaintiff has failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* ECF No. [88] at 1–8.  Specifically, they argue that Plaintiff's conversion and theft claims "are not properly pled, inconsistent, and contradicted by the exhibits" Plaintiff attached to the Final Amended Complaint and that Plaintiff's unjust enrichment claim "is not properly pled and fails as a matter of law." *Id.* at 7–8.  They also argue the Court does not have jurisdiction to decide Plaintiff's claims both because he lacks standing to bring them and because two equitable doctrines — collateral estoppel and *Rooker-Feldman* — bar them.  *Id.* at 8–13.

In his Response to the Gurian Motion, Plaintiff points to allegations in the Final Amended Complaint that he says show the Gurian Defendants "at a minimum" aided and abetted the Rodriguez Defendants in committing conversion and theft by depriving him of the Drexel buildings and the benefits of those buildings (like rent).  *See* ECF No. [91] at 3–5.  He also argues that the Final Amended Complaint alleges the necessary elements for unjust enrichment because he conferred a benefit on the Gurian Defendants through the settlement agreement they executed to resolve the related state court lawsuit. *Id.* at 6–7.

As to the jurisdictional arguments, Plaintiff contends that he has standing, even though the Drexel buildings were "titled to an entity" and not to him personally, because he is "a direct beneficiary" of the property benefits like rent, so he suffered a redressable injury when the property was taken from him. *Id.* at 7–10.  He argues that collateral estoppel does not apply because the claims and parties are different than in the underlying state lawsuit and that the *Rooker-Feldman* doctrine does not apply because some courts have recognized an exception for

state-court judgments procured by fraud, as Plaintiff alleges occurred here. *Id.* at 10–15.

In their Reply, the Gurian Defendants argue that Plaintiff's claims against them cannot stand both because they do not own the purportedly stolen Drexel buildings and because Plaintiff did not own the Drexel buildings when they were taken by levy and execution. *See* ECF No. [99] at 3–6. And they reiterate that, because Plaintiff did not personally own the Drexel buildings, he does not have standing to bring claims for an alleged deprivation of his interest in them either individually or on the corporate owners' behalf. *Id.* at 6–7.

**B. First Rodriguez Motion – ECF No. [93]**

Defendants AJAR Holdings, Kalb, Millan, Millan Law Firm, Rodriguez, and the Rodriguez Law Firm (the "Rodriguez Defendants") filed two different Motions to Dismiss. *See* ECF No. [93]; ECF No. [95]. In the First Rodriguez Motion, the Rodriguez Defendants argue that the Court should dismiss the Final Amended Complaint under Rule 12(b)(1) and Rule 12(b)(6) because it suffers from the following defects: "lack of subject matter jurisdiction," "lack of standing," it is an "improper shotgun pleading," it "fail[s] to state a claim," and it violates "the *Rooker-Feldman* Doctrine." *See* ECF No. [93] at 1.

As to jurisdiction, they contend there is no diversity jurisdiction here because Plaintiff has not provided appropriate proof that he is a citizen of the United Kingdom, not Florida, and because Plaintiff has failed to plead the citizenship of the individual members of each LLC and limited partnership he has sued. *Id.* at 2–6. They argue Plaintiff lacks standing because the Drexel buildings belonged to corporate entities, not to him. *Id.* at 6–7. And they argue the *Rooker-Feldman* doctrine applies because "[a]ll of the activities and related causes of action set forth in the [Final] Amended Complaint are predicated upon actions pending and decided before" Florida state trial and appeals courts. *Id.* at 15–18.

As to the procedural and substantive merits, they argue the Final Amended Complaint fails to comply with federal pleading rules because it is a "disjointed, rambling series of allegations" that incorporates immaterial factual allegations into every claim and effectively accuses all eleven Defendants "of the same alleged conduct under a multitude of theories," so Defendants cannot "discern exactly what is being alleged and against whom in each of the counts." *Id.* at 7–9.  They also argue that Plaintiff cannot state a claim on Counts II, IV, V, and VI because his theories arise out of an unrecorded, unwitnessed contract to which they are not parties, and Plaintiff does not hold title to the Drexel buildings. *Id.* at 9–15.

In his Response to the First Rodriguez Motion, Plaintiff argues that he has shown his Israeli citizenship and his United Kingdom domicile with documents he submitted in response to an earlier motion to dismiss, *see* ECF No. [98] at 4 n.1, and that his use of Miami addresses to receive filings in this case does not defeat his foreign citizenship because residence and domicile are different concepts with different effects, *see* ECF No. [98] at 4–7.  He notes that his failure to allege the citizenship of the individual members of the business entity Defendants is not fatal to the Final Amended Complaint because it is a procedural defect that he can remedy if the record is clear that complete diversity existed when he filed the lawsuit. *Id.* at 7–8.  Plaintiff further argues he has standing because he "indirectly" was "a stakeholder in the entity" that owned the Drexel buildings and as a result was "a direct beneficiary of the benefits derived from" them (like rent). *Id.* at 8–11. And he argues that the *Rooker-Feldman* doctrine does not apply here because the underlying state-court judgment was procured through fraud and that he could not raise his "federal claims in the state court" because of that fraud. *Id.* at 22–25.

Plaintiff contends he has properly stated his claims, both because he alleged the Rodriguez Defendants were "within the circle of criminals who worked to deprive" him of the

Drexel buildings and their benefits and because he "conveyed the benefit of a settlement" of the underlying state lawsuit — specifically, $10,000 and additional money from release of an appeal bond — to Defendants "in exchange for a cessation of executing against his assets." *Id.* at 11–15. He argues that his failure to record his alleged leasehold interest is not fatal because his interest in the Drexel buildings was "open and notorious" and was otherwise known to the Rodriguez Defendants from the record in the underlying state lawsuit. *Id.* at 15–18. Plaintiff further states the Rodriguez Defendants "are materially involved" in the construction contract that produced the liens and leasehold in the Drexel buildings, despite not being parties to that contract, because those things attach to the property, so they were carried with the Drexel buildings when Defendant AJAR Holdings became their owner. *Id.* at 18–22. And he argues he has a superior possessory interest in the Drexel buildings because of the leasehold. *Id.*

In their Reply, the Rodriguez Defendants clarify that they are raising a factual, not facial, challenge to jurisdiction, which means the allegations in the Final Amended Complaint are not accepted as true. *See* ECF No. [101] at 2–3. They argue Plaintiff cannot be a citizen of the United Kingdom because, as a convicted felon, he would not qualify even for residency in that country. *Id.* at 3–4. They reiterate Plaintiff has admitted he did not own the Drexel buildings when they were sold at the sheriff's sale but instead owned 100% interest in the business entity that owned them. *Id.* at 5–6. As a result, they argue his claim is derivative of the business entity's claim and, under Florida law, he cannot bring it on the business's behalf. *Id.* They also reiterate that the Final Amended Complaint is a shotgun pleading, adding that another judge in this District dismissed a similar complaint of Plaintiff's for exactly that reason. *Id.* at 6. And they contend the *Rooker-Feldman* doctrine applies because the fraud Plaintiff alleges purportedly occurred during the underlying state-court lawsuit and "was already raised, litigated, appealed[,]

and all decided against" Plaintiff by the state courts.  *Id.* at 7–8.

### C.  Second Rodriguez Motion – ECF No. [95]

The Second Rodriguez Motion was filed on the same day as, but separately from, the First Rodriguez Motion.  *See* ECF No. [93]; ECF No. [95].  In the Second Rodriguez Motion, the Rodriguez Defendants argue that the fugitive disentitlement doctrine, an equitable doctrine that limits a fugitive's access to file his own claims in court for refusing to otherwise submit to the court's authority, bars Plaintiff from pursuing the claims in the Final Amended Complaint.  *See generally* ECF No. [95].  They note that Plaintiff is currently a fugitive because he has been charged with violating his probation sentence for a criminal conviction related to Plaintiff's theft of building materials and organized fraud related to the Drexel buildings but has repeatedly failed to appear in court to face that charge, *see* ECF No. [95] at 2–4, and has since April 2023 had an arrest warrant out against him, *see* ECF No. [95-3]; ECF No. [95-4].  So it would be unfair to allow Plaintiff to use the Court's power to remedy his claims while he himself is "hiding from justice." *See* ECF No. [95] at 4.

In his Response to the Second Rodriguez Motion, Plaintiff argues that the fugitive disentitlement doctrine does not apply because there is no nexus between his fugitive status in his criminal case and the claims he asserts in this civil lawsuit.  *See* ECF No. [98] at 25–26.  And in their Reply, the Rodriguez Defendants argue there is an appropriate nexus because Plaintiff's criminal convictions stem from an "organized scheme to defraud" through which he illegally obtained building materials that he used to renovate the Drexel buildings, and all of Plaintiff's claims in this lawsuit related to his loss of the Drexel buildings.  *See* ECF No. [101] at 8–9.

### D.  Eljaiek Motion – ECF No. [100]

Defendant Eljaiek bases his Motion to Dismiss on his contention that Plaintiff has failed

to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), at least as to him, because the Final Amended Complaint relies "on broad, conclusory statements that fail to tie specific, wrongful acts to" him individually.  *See* ECF No. [100] at 4.  In the Eljaiek Motion, Eljaiek notes he is "a former managing partner in" the Marin Law Firm, which represented Defendant Opustone in the underlying state lawsuit against Plaintiff that produced the judgment resulting in the sheriff's sale that caused Plaintiff to lose his interest in the Drexel buildings.  *Id.* at 2.  But Eljaiek argues "he was not involved in" that lawsuit "whatsoever."  *Id.*  Eljaiek also explains that his association with Defendant Rodriguez ended in 2006, "well before" the underlying lawsuit; he stepped down from the Marin Law Firm in 2022; and he just "happened to share office space" with other Defendants. *Id.* at 2, 5.

In his Response to the Eljaiek Motion, Plaintiff argues that the conspiracy he alleges in the Final Amended Complaint occurred when Eljaiek was still at the Marin Law Firm and that Eljaiek is connected to the conspiracy because Rodriguez, the Rodriguez Law Firm, and Kalb recruited him and the Marin Law Firm into the conspiracy because of their "prior business dealings" with Rodriguez and the Rodriguez Law Firm. *See* ECF No. [103] at 3–5. Plaintiff also argues that Eljaiek has "respondeat superior liability" because he was Defendant Gurian's manager during the underlying state lawsuit.  *Id.* at 6.  Eljaiek did not file a Reply.

### E.  Motion for Hearing – ECF No. [119]

Finally, in the Motion for Hearing, Plaintiff asks the Court to hold a hearing on the four Motions to Dismiss or, in the alternative, to refer the motions to the undersigned for a Report and Recommendation.  *See* ECF No. [119] at 3.  All five motions are now ripe for review.

## II.     LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

"Federal courts are courts of limited subject-matter jurisdiction." *Hensley v. Hartford Cas. Ins. Co.*, 113 F.4th 1327, 1332 (11th Cir. 2024) (quotation marks omitted).  "A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Id.* (quotation marks omitted).  At issue here is diversity jurisdiction under § 1332(a).  Also relevant is Article III standing, which "is a threshold jurisdictional matter."  *Romano v. John Hancock Life Ins. Co. (USA)*, 120 F.4th 729, 736 (11th Cir. 2024).

### 1.  Diversity Jurisdiction

"When a plaintiff files suit in federal court, she must allege facts that, if true, show federal subject matter jurisdiction over her case exists. Those allegations, when federal jurisdiction is invoked based upon diversity, must include the citizenship of each party." *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013) (citation omitted).  That is because "the diversity jurisdiction statute requires *complete* diversity," *see, e.g.*, *Orchid Quay, LLC v. Suncor Bristol Bay, LLC*, 178 F. Supp. 3d 1300, 1303 (S.D. Fla. 2016), which means "no plaintiff" can be "a citizen of the same state as any defendant," *see Travaglio*, 735 F.3d at 1268; 28 U.S.C. § 1332(a)(1) (requiring the action to be between "citizens of different States"), and "an alien on both sides of a dispute will defeat jurisdiction," *see Caron v. NCL (Bahamas) Ltd.*, 910 F.3d 1359, 1364 (11th Cir. 2018); 28 U.S.C. § 1332(a)(2) (requiring the action to be between "citizens of a State and citizens or subjects of a foreign state").

"[I]f a complaint's factual allegations do not assure the court it has subject matter

jurisdiction, then the court is without power to do anything in the case." *Travaglio*, 735 F.3d at 1268.  But a party's failure to properly allege diversity jurisdiction does not kill the case "if the evidence submitted during the course of the proceedings cures any jurisdictional pleading deficiency by convincing" the court "of the parties' citizenship." *Id.* at 1269.  Indeed, the "whole record . . . may be looked to, for the purpose of curing a defective averment of citizenship, where jurisdiction in a Federal court is asserted to depend upon diversity of citizenship, and if the requisite citizenship is anywhere expressly averred in the record, or facts are therein stated which, in legal intendment, constitute such allegation, that is sufficient." *Sun Printing & Publ'g Ass'n v. Edwards*, 194 U.S. 377, 382 (1904).  "The party commencing suit in federal court . . . has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010) ("When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof.").

"Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Dome v. Celebrity Cruises Inc.*, 595 F. Supp. 3d 1212, 1219 (S.D. Fla. 2022) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  "Residence alone is not enough." *Id.* (quoting *Travaglio*, 735 F.3d at 1269).  "Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction. A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning." *Id.* at 1219–20 (alterations adopted, quotation marks omitted).  "To put it another way, domicile (or citizenship) consists of two elements: residency . . . and intent to remain." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021).  "Courts

look to various factors in determining a person's intent to remain . . ., including: the location of real and personal property, business ownership, employment records, the location of bank accounts, payment of taxes, voter registration, vehicle registration, driver's license, membership in local organizations, and sworn statements of intent." *Id.*; *see also Sunseri v. Macro Cellular Partners*, 412 F.3d 1247, 1249 (11th Cir. 2005) (considering "medical records" and "utility and phone bills"); *Simmons v. Skyway of Ocala*, 592 F. Supp. 356, 359 (S.D. Ga. 1984) (considering "location of one's household furnishings," "acquiring a telephone number and listing it," and "receiving mail").  No single factor is determinative because the Court must "assess domicile based on the totality of the circumstances."  *See Bal Harbour Shops, LLC v. Saks Fifth Ave. LLC*, 645 F. Supp. 3d 1321, 1328 (S.D. Fla. 2022).

"For well over a century, federal law has drawn a sharp distinction between corporations and virtually every other form of association for purposes of determining diversity of citizenship." *Osting-Schwinn*, 613 F.3d at 1086.  "On the one hand, corporations are considered legal persons whose citizenship does not depend on that of their shareholders." *Id.*  As separate legal persons, corporations are "presumed conclusively to be citizens" of their "State of incorporation."  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 188 (1990) (quotation marks omitted).  "Additionally, 'a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business' for diversity jurisdiction purposes." *Dome*, 595 F. Supp. 3d at 1220 (quoting 28 U.S.C. § 1332(c)(1)).

"On the other hand, unincorporated associations do not themselves have any citizenship, but instead must prove the citizenship of each of their members to meet the jurisdictional requirements of 28 U.S.C. § 1332." *Osting-Schwinn*, 613 F.3d at 1086.  "Furthermore, no matter

the particular features of an unincorporated entity, it has long been the tradition of the common law to treat as legal persons only incorporated groups and to assimilate all others to partnerships, which must plead the citizenship of each member." *Id.* (cleaned up).  Indeed, the Supreme Court has "reject[ed] the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members" and instead has "adhere[d] to [its] oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members." *See Carden*, 494 U.S. at 195 (quotation marks omitted).  Put simply, "for purposes of diversity of citizenship, a limited partnership is a citizen of each state in which any of its partners, limited or general, are citizens." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021 (11th Cir. 2004).  The same is true for a limited liability company. *See id.* at 1022.

### 2.  Standing

"Article III standing is a threshold jurisdictional matter." *Romano*, 120 F.4th at 736; *cf. Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." (citation omitted)).  "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quotation marks omitted).  "For a party to have standing to bring a lawsuit, it must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. In plainer language, the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." *Muransky v. Godiva Chocolatier, Inc.*, 979

F.3d 917, 924 (11th Cir. 2020) (en banc) (citation and quotation marks omitted).

"At the pleading stage of a case, general factual allegations of injury can suffice. But that is not a free pass—these general factual allegations must plausibly and clearly allege a concrete injury. Mere conclusory statements do not suffice." *Id.* (alteration adopted, citations and quotation marks omitted). "A plaintiff needs to plead (and later support) an injury that is concrete, particularized, and actual or imminent, rather than conjectural or hypothetical." *Id.* at 925 (footnote omitted).

For claims stemming from an injury to a business entity, federal courts "look to the law of the state (or place) of incorporation to determine whether an action is direct or derivative." *Freedman v. magicJack Vocaltec Ltd.*, 963 F.3d 1125, 1132 (11th Cir. 2020). In Florida, a "direct action may be maintained only where (1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company, and (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members." *Id.* at 1136 (quotation marks omitted). "A derivative action is a cause of action brought by a stockholder to enforce a right of action that exists on behalf of a corporation." *Lewis v. Seneff*, 654 F. Supp. 2d 1349, 1357 (M.D. Fla. 2009) (citing *Fox v. Prof'l Wrecker Operators of Fla., Inc.,* 801 So.2d 175, 179 (Fla. 5th DCA 2001)).

"Whether a claim is considered to be direct or derivative is determined from the body of the complaint rather than the label employed by the parties." *In re Bank United Fin. Corp.*, 442 B.R. 49, 54 (Bankr. S.D. Fla. 2010). "[W]hen the shareholder of a corporation is an individual," a "court need focus only on the activity of the directors and officers and the claims of the shareholder and determine whether the nature of the claims are unique to the shareholder or are

actually claims that belong to the corporation itself." *Id.* "[W]hen the shareholder of a corporation is a corporation as well," courts in this District use a "two-part inquiry": (1) "does the complaint state a cause of action for breach of fiduciary duty by the holding company officer or director to the holding company"; and (2) "if the act or failure to act could also be viewed as a breach of duty to the subsidiary by the same person in his or her capacity as a director or officer of the subsidiary, is the injury alleged to have been caused by the breach one that could only occur at the parent level or is it a harm shared with, or occurring solely at, the subsidiary level"? *See id.* at 55, 58–59.

Rule 23.1 "governs federal derivative actions." *Kammona v. Onteco Corp.*, 962 F. Supp. 2d 1299, 1303 (S.D. Fla. 2013). To sufficiently plead a derivative action under that Rule, a plaintiff must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." *See id.* (quoting Fed. R. Civ. P. 23.1(b)(3)).

## B. Equitable Doctrines that Prevent a Court from Exercising Jurisdiction

Even if a court has jurisdiction to decide a case, there may be reasons the court cannot exercise that jurisdiction. Among those reasons are the equitable doctrines of issue preclusion, claim preclusion, and *Rooker-Feldman*.

### 1. Issue Preclusion and Claim Preclusion

The Supreme Court "has long recognized that the determination of a question directly involved in one action is conclusive as to that question in a second suit." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (quotation marks omitted). "The idea is straightforward: Once a court has decided an issue, it is forever settled as between the parties,

thereby protecting against the expense and vexation attending multiple lawsuits, conserving judicial resources, and fostering reliance on judicial action by minimizing the possibility of inconsistent verdicts." *Id.* (cleaned up). "In short, a losing litigant deserves no rematch after a defeat fairly suffered." *Id.* (quotation marks omitted).

The general rule of issue preclusion is that "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* at 148 (alteration adopted, citation omitted); *cf. Bravo-Fernandez v. United States*, 580 U.S. 5, 10 (2016) ("[I]ssue preclusion ordinarily bars relitigation of an issue of fact or law raised and necessarily resolved by a prior judgment.").[1] "If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *In re St. Laurent*, 991 F.2d 672, 675–76 (11th Cir. 1993); *see also In re Harris*, 3 F.4th 1339, 1344 (11th Cir. 2021).

"The essential elements of issue preclusion under Florida law are that the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction." *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1332 (11th Cir. 2010) (quotation marks omitted). "Identical parties for collateral estoppel purposes . . . includes parties in privity with the parties in the prior

---

[1] The Supreme Court has recognized that "issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) (noting that issue preclusion "also is referred to as direct or collateral estoppel"). The Parties argue this concept using the term collateral estoppel. *See* ECF No. [88] at 8–13. In the Eleventh Circuit, collateral estoppel "requires that (1) an identical issue was presented in the prior proceeding; (2) the issue was a critical and necessary part of the prior proceeding; (3) the issue was fully and fairly litigated in the previous proceeding; (4) the parties in the two proceedings were identical; and (5) a final decision was rendered by a court of competent jurisdiction." *Bryant v. Jones*, 575 F.3d 1281, 1303 (11th Cir. 2009).

litigation. Privity exists where there is a successive relationship to the same property right." *Cmty. Bank of Homestead v. Torcise*, 162 F.3d 1084, 1087 n.7 (11th Cir. 1998) (citation and quotation marks omitted).

Similarly, the "doctrine of claim preclusion instructs that a final judgment on the merits forecloses successive litigation of the very same claim." *Bravo-Fernandez*, 580 U.S. at 9 (alteration adopted, quotation marks omitted); *see also Taylor*, 553 U.S. at 892 ("Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." (quotation marks omitted)). Claim preclusion "applies under Florida law when all four of the following conditions are present: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of quality in persons for or against whom claim is made." *Brown*, 611 F.3d at 1332 (quotation marks omitted).

### 2. *Rooker-Feldman* Doctrine

"*Rooker-Feldman* means that federal district courts cannot review or reject state court judgments rendered before the district court litigation began." *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021); *see also Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). Put simply, the doctrine bars federal lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The injury must be caused by the judgment itself. Period." *Behr*, 8 F.4th at 1212.

The *Rooker-Feldman* doctrine ensures that courts "do not exercise jurisdiction over the appeal of a state court judgment." *See id.* When evaluating whether the doctrine applies, courts

look at "whether resolution of each individual claim requires review and rejection of a state court judgment," not "whether the whole complaint seems to challenge a previous state court judgment." *See id.* at 1213. That is because *Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *See Exxon*, 544 U.S. at 293. Instead, if "a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* (alterations adopted, quotation marks omitted); *see also Behr*, 8 F.4th at 1212 (noting that anything other than an appeal that, regardless of its label, attempts to exercise jurisdiction over a state court judgment "can and should be addressed by other preclusion or abstention doctrines").

### C. Procedural and Merits Issues

If a court has jurisdiction to decide a case and no equitable doctrines apply to bar the court from exercising that jurisdiction, the court assesses whether the complaint meets the procedural and merits requirements to survive a motion to dismiss.

#### 1. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b), a party may move to dismiss a claim on several bases, including a "lack of subject-matter jurisdiction," Fed. R. Civ. P. 12(b)(1), and a "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6). Rule 12 also provides that a "party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." *See* Fed. R. Civ. P. 12(g)(2).

"The Federal Rules of Civil Procedure require the dismissal of a claim if a court lacks

subject matter jurisdiction over it." *Griffin v. IRS*, 730 F. Supp. 3d 1312, 1316 (S.D. Fla. 2024) (citing Fed. R. Civ. P. 12(b)(1), (h)(3)).  "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley*, 524 F.3d at 1232.  "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1232–33 (citation omitted). "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* at 1233.

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted, quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation and footnote omitted).  A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration adopted, quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a probability requirement, but it asks for more than a

sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (alteration adopted, citation and quotation marks omitted).

"Courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, but need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party." *Campos v. INS*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998); *see also Ellen S. v. Fla. Bd. of Bar Exam'rs*, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994) (noting that there "are a few exceptions to" the rule requiring courts to accept a complaint's allegations as true, "such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice"). When performing this analysis, the court may consider the complaint itself along with any "documents attached to" it "or incorporated in the complaint by reference." *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014).

A "document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents," a court "may consider such a document provided it meets the centrality requirement." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also Wilchombe v.*

*TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (noting that a court can consider "any documents referred to in the complaint which are central to the claims"); *Kirchner v. Ocwen Loan Servicing, LLC*, 257 F. Supp. 3d 1314, 1317 (S.D. Fla. 2017) ("[A] court may consider a written agreement upon which Plaintiffs' claims are based if it is referenced in the Complaint, even though Plaintiffs failed to attach it."). A document meets the centrality requirement if it is, or the parties' references to the document are, "a necessary part of their effort to make out a claim." *See Day*, 400 F.3d at 1276; *Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020) (finding that a contract was "not central to" a plaintiff's claims because it was "not a necessary or essential part of" her "effort to show that she was injured due to" the defendant's negligence);.*Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 155 F. Supp. 3d 1310, 1315–16 (S.D. Fla. 2016) (noting that in "determining whether a document is central to a party's claims, courts consider such factors as" whether "the claims depend on the documents," "the contents of the documents are alleged in the complaint," and "the documents are referred to throughout the complaint").

Along with any documents attached to or referenced in the complaint, a court may also "consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day*, 400 F.3d at 1276. "In this context, 'undisputed' means that the authenticity of the document is not challenged." *Id.* And if the documents attached to the complaint or the motion to dismiss "contradict the general and conclusory allegations of the pleading, the" attached documents "govern." *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *id.* at 1205 (noting that "the exhibits attached to the complaint plainly show that" a conclusory allegation in the complaint "is not the case"); *Leader*, 155 F. Supp. 3d at 1316.

Finally, a court may consider "matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

### 2. Pleading Requirements

To state a claim for relief, a pleading "must contain" three substantive parts: (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for the relief sought." *See* Fed. R. Civ. P. 8(a). Along with that substance, a pleading must also conform to certain format requirements. *See* Fed. R. Civ. P. 10. Those substance and format requirements are aimed at ensuring that a complaint contains "sufficient factual matter, accepted as true," *see Iqbal*, 556 U.S. at 678, to both "state a claim to relief that is plausible on its face" and "give the defendant fair notice of what the claim is and the grounds upon which it rests," *see Twombly*, 550 U.S. at 570 (alteration adopted, quotation marks omitted).

"[D]istrict courts have the power and the duty to define the issues at the earliest stages of litigation," which includes the responsibility of dismissing or requiring a party to correct shotgun pleadings. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).[2] The Eleventh Circuit has identified at least four different types of shotgun pleadings, including complaints that "contain[] multiple counts where each count adopts the

---

[2] A shotgun pleading is one that "fail[s] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015); *see also Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a responsi[ve] pleading constitutes shotgun pleading.").

allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; and complaints that "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321–23 (footnotes omitted). It has also "condemned shotgun pleadings time and again" because they "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–57 (11th Cir. 2018) (citation omitted); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

Given the havoc they wreak, the Eleventh Circuit has specifically instructed district courts not to tolerate shotgun pleadings because "[t]olerating such behavior constitutes toleration of obstruction of justice." *Jackson*, 898 F.3d at 1357 (footnote omitted); *see also Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("[S]hotgun complaints . . . are altogether unacceptable."). If the claims of a complaint "are so poorly pleaded that" it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *see Weiland*, 792 F.3d at 1325 (emphasis and quotation marks omitted), a district court "retains authority to dismiss a shotgun pleading on that basis alone," *see Jackson*, 898 F.3d at 1357.

### 3.   Hearings

Under Local Rule 7.1, a party may request a hearing on any motion.  *See* S.D. Fla. L.R. 7.1(b)(2).  But "[n]o hearing will be held on motions unless set by the Court."  *See* S.D. Fla. L.R. 7.1(b)(1).  And the "Court in its discretion may grant or deny a hearing as requested, upon consideration of both the request and any response thereto by an opposing party."  *See* S.D. Fla. L.R. 7.1(b)(2).

### 4.   Judicial Notice

"The court may judicially notice a fact that is not subject to reasonable dispute because it" either "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). "Public records are among the permissible facts that a district court may consider."  *Tecnoglass, LLC v. RC Home Showcase, Inc.*, 301 F. Supp. 3d 1267, 1271 n.1 (S.D. Fla. 2017) (quotation marks omitted). This includes "[c]orporate records" that "are publicly available at the State of Florida, Division of Corporations website."  *Tecnoglass, LLC v. RC Home Showcase, Inc.*, 301 F. Supp. 3d 1267, 1271 n.1 (S.D. Fla. 2017); *see also Fameflynet, Inc. v. Oxamedia Corp.*, No. 17-80879-CIV, 2018 WL 8244525, at *2 n.1 (S.D. Fla. May 1, 2018) ("The Court takes judicial notice of the corporate records of Defendant . . . maintained by the Florida Secretary of State, which indicate that Defendant is a Delaware corporation that has an appointed registered agent in . . . Florida"); *Regions Bank v. NBV Loan Acquisition Member, LLC*, No. 21-23578-CIV, 2022 WL 17359786, at *2 (S.D. Fla. Dec. 1, 2022) (noting mortgage records "are maintained by Florida and Delaware's Secretaries of State" and "fall within the parameters of Federal Rule of Evidence 201(b)").

Public records that a court may judicially notice also include "pleading[s] filed in another court," although "judicial notice may be taken only to establish what those documents contain, not the veracity of their contents." *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1364 (S.D. Fla. 2016); *see also United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (noting that a "court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings" (quotation marks omitted)). They include "another court's order" for "the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation and related filings." *See In re Delta Res., Inc.*, 54 F.3d 722, 725 (11th Cir. 1995) (quotation marks omitted). And they include "state court docket sheets" and their details, like dates. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (recognizing that dates from "online state court dockets," which also contained "links to electronic versions of many . . . filings, as well as to many state trial and appellate court orders," "constitute judicially noticeable facts under" Federal Rule of Evidence 201).

A "court cannot," however, "take judicial notice of factual findings of another court." *Grayson v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1204, 1225 (11th Cir. 2017) (quotation marks omitted). "If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of issue preclusion would be superfluous." *Id.* (alteration adopted) (quoting *Jones*, 29 F.3d at 1553).

### 5. Breach of Contract

"Before an action for breach of contract can be sustained, there must be an enforceable contract." *See, e.g., Kol B'seder, Inc. v. Certain Underwriters at Lloyd's of London subscribing to Certificate No.154766 under Cont. No. B0621MASRSWV15BND*, 261 F. Supp. 3d 1257, 1266

(S.D. Fla. 2017) (citation omitted); *id.* (noting that the "elements of a breach of contract claim under Florida law" are the "existence of a valid contract, a material breach, and damages"). "Florida's statute of frauds provides that 'no action shall be brought upon any agreement that is not to be performed within the space of 1 year from the making thereof unless the agreement or promise upon which such action shall be brought shall be in writing and signed by the party to be charged therewith.'" *Taxinet Corp. v. Leon*, 114 F.4th 1212, 1231 (11th Cir. 2024) (alterations adopted) (quoting Fla. Stat. § 725.01).

"[J]udging from the time [an] oral contract of indefinite duration is made, if the contract's full performance is possible within one year from the inception of the contract, then it falls outside the statute of frauds." *Browning v. Poirier*, 165 So. 3d 663, 666 (Fla. 2015). An oral agreement "is one of indefinite duration" if "no definite time was fixed by the parties for the performance of their agreement." *See id.* (quotation marks omitted); *Movie Prop Rentals LLC v. Kingdom of God Glob. Church*, 704 F. Supp. 3d 1303, 1312 (S.D. Fla. 2023) (finding that an oral contract was not one of indefinite duration because it "was plainly intended to be completed within three and a half months' time"). If an oral agreement specifies the time for performance and "contemplates performance beyond" one year, the statute of frauds bars a claim for breach of contract. *See OJ Com., LLC v. Ashley Furniture Indus., Inc.*, 359 F. Supp. 3d 1163, 1173–74 (S.D. Fla. 2018) (finding that the statute of frauds barred an oral agreement "entered into in 2017" that "contemplated performance through the end of 2018" because "it was not possible that" the "contract could be fully performed within one year").

"It is axiomatic that a party may not be held liable for a breach of contract if they were not a party to the contract or otherwise agreed to accept its terms." *ConSeal Int'l Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257, 1269 (S.D. Fla. 2020) (alteration adopted, quotation marks

omitted)).  But "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quotation marks omitted); *see also ConSeal Int'l*, 488 F. Supp. 3d at 1268–70 (applying the principle to a contract governed by Florida law).

## III.  DISCUSSION

Between them, the four Motions to Dismiss attack the Final Amended Complaint on several grounds.  Some of those grounds — the assertion that the Court lacks subject-matter jurisdiction, for example, or the argument that, even if the Court has subject-matter jurisdiction, the Court should choose not to exercise it because of an equitable doctrine — would end the case as to all the Parties if the Court agrees that they apply here.  For that reason, the Court frames its analysis by issue instead of by Motion.

### A.  Jurisdiction

Because the Court can hear this case only if it has subject-matter jurisdiction, *see Hensley*, 113 F.4th at 1332, its analysis must begin there.  Plaintiff filed the case in federal court, so he must allege facts that, if true, show that federal subject-matter jurisdiction exists. *See Travaglio*, 735 F.3d at 1268.

#### 1.  Diversity Jurisdiction

The Final Amended Complaint alleges that Plaintiff is a citizen of the United Kingdom and that all eleven defendants are either citizens of, or registered to do business in, the United States.  *See* ECF No. [76] at 2–3.  Those allegations appear to bring the case within the language of § 1332(a)(2), which governs actions between citizens of a State and citizens of a foreign state.

Although earlier versions of the complaint did not, *see* ECF No. [54] at 2–3, the Final

Amended Complaint properly alleges the citizenship of all the individual parties, *see* ECF No. [76] at 2–3. The Final Amended Complaint does not, however, properly allege the citizenship of all the business entity Defendants. As the Supreme Court and the Eleventh Circuit have made clear, corporations are citizens of their "State of incorporation" regardless of their shareholders' citizenship. *See Carden*, 494 U.S. at 188; *Osting-Schwinn*, 613 F.3d at 1086. And any unincorporated entity, regardless of its classification or features, is treated for jurisdictional purposes like a partnership. *See Osting-Schwinn*, 613 F.3d at 1086. The citizenship of a partnership is determined by looking at the citizenship of every one of its members. *See id.*; *Carden*, 494 U.S. at 195; *Rolling Greens*, 374 F.3d at 1021–22. If any of the members share citizenship with an opposing party, diversity jurisdiction is defeated. *See Carden*, 494 U.S. at 195; *Osting-Schwinn*, 613 F.3d at 1086.

Despite these well-established jurisdictional principles, the Final Amended Complaint does not allege the State of incorporation for the Marin Law Firm and Opustone, nor does it allege the citizenship of all members of the Millan Law Firm and the Rodriguez Law Firm.[3] *See* ECF No. [76] at 2–3. Those omissions mean that, on its face, the Final Amended Complaint fails to establish diversity jurisdiction under § 1332(a)(2). *See Travaglio*, 735 F.3d at 1268; *Carden*, 494 U.S. at 195; *Osting-Schwinn*, 613 F.3d at 1086.

But a party's failure to properly allege diversity jurisdiction does not kill the case "if the evidence submitted during the course of the proceedings cures any jurisdictional pleading deficiency by convincing" the court "of the parties' citizenship." *See Travaglio*, 735 F.3d at 1269. So the Court must look to the whole record to see if it cures Plaintiff's "defective

---

[3] As far as the Court can tell, anyway, as the Final Amended Complaint does not even specify how many members the Millan Law Firm and the Rodriguez Law Firm have. *See* ECF No. [76] at 2–3. It does allege the State of incorporation of AJAR Holdings, which is Wyoming. *Id.*

averment of citizenship" as to the business entity Defendants, either through an express allegation or through facts that because of their legal effect "constitute such allegation." *Sun Printing*, 194 U.S. at 382. The Court may also, as always, take judicial notice of public records like those on the Florida Division of Corporations' website. *See* Fed. R. Evid. 201(b); *Avado Brands*, 187 F.3d at 1278; *Tecnoglass*, 301 F. Supp. 3d at 1271 n.1; *Fameflynet*, 2018 WL 8244525, at *2 n.1.

Looking to those permissible sources, the Court is convinced that all the business entity Defendants are citizens of Florida for jurisdictional purposes. The official Florida Division of Corporations website entries for each of the business entity Defendants note that they are registered as Florida entities and that everyone and everything associated with the businesses — their registered agents, their directors, their members (where relevant), even the entities themselves — have Florida mailing addresses.[4] In fact, with the exception of AJAR Holdings, which has two official Florida Division of Corporations website entries, one of which indicates it is a foreign corporation registered in Wyoming, every location in every entry is in Florida.

Because Plaintiff alleged that he is a citizen of the United Kingdom and the Court is satisfied that all Defendants are citizens of Florida, it appears complete diversity exists. *See Orchid Quay*, 178 F. Supp. 3d at 1303; *Travaglio*, 735 F.3d at 1268; *Caron*, 910 F.3d at 1364. But the Rodriguez Defendants argue that, despite his allegations, Plaintiff is not a citizen or a

---

[4] To find this information, the Court visited the official Florida Division of Corporations website, s*ee* Fla. Div. of Corp., https://dos.fl.gov/sunbiz/ (last visited Jan. 15, 2024), clicked on the "Search Records" tab, and used the search by entity name feature to find each business entity Defendant, s*ee* Fla. Div. of Corp., https://search.sunbiz.org/Inquiry/CorporationSearch/ByName (last visited Jan. 15, 2024). For the Marin Law Firm, Opustone, the Millan Law Firm, and the Rodriguez Law Firm, the details contained on the results page listed only Florida addresses, as did the original creation documents and the 2024 annual reports. AJAR Holdings had two official Florida Division of Corporations website entries, one of which indicated it is a Florida corporation and one of which indicated it is a Wyoming corporation. Even so, both entries listed only Florida addresses for all people and places associated with AJAR Holdings. And a corporation is a citizen of every State in which it has been incorporated and the State where it has its principal place of business. *Dome*, 595 F. Supp. 3d at 1220; § 1332(c)(1)).

domiciliary of the United Kingdom because he was born in Israel, has not produced evidence
that he has been naturalized as a UK citizen, and is disqualified from UK residency because he is
a felon and a fugitive.  *See* ECF No. [93] at 2–6; ECF No. [101] at 2–5.  Those arguments
amount to a factual attack on the Court's jurisdiction, which means the Court cannot take the
allegations in the Final Amended Complaint as true and instead must consider extrinsic evidence
to discern if Plaintiff has met his jurisdictional burden. *See Stalley*, 524 F.3d at 1232–33; *Osting-
Schwinn*, 613 F.3d at 1085.

More specifically, the Rodriguez Defendants argue that Plaintiff "has failed to provide a
passport, certificate of naturalization or any other proof in support of his allegation that he is a
citizen of the United Kingdom."  ECF No. [95] at 2.  The Court disagrees.  While it is true that
the record does not contain a UK passport or naturalization certificate for Plaintiff, being a legal
citizen is not the only way Plaintiff can establish UK citizenship for jurisdictional purposes.
That is because citizenship is equivalent to domicile for purposes of diversity jurisdiction.  *See
Dome*, 595 F. Supp. 3d at 1219–20.  Thus, Plaintiff can be a UK citizen for jurisdictional
purposes if he is domiciled in the UK.

A person's domicile is the place of his true, fixed, and permanent home to which he has
the intention of returning.  *See id.*; *Smith*, 991 F.3d at 1149.  The Rodriguez Defendants argue
that Plaintiff "cannot claim a permanent intent to reside" in the UK because his felon and
fugitive status mean "he is not eligible to stay" there.  *See* ECF No. [101] at 3.  They also argue
that he "has failed and refused to provide the address of his alleged domicile."  *See* ECF No.
[101] at 3.  But the record in fact contains evidence of Plaintiff's UK domicile.

In his Response to the Rodriguez Defendants' earlier motion to dismiss, Plaintiff
submitted photocopies of his Israeli passport, a lease for a London apartment, utility bills for a

London apartment, bank statements showing payments to UK utility companies, and correspondence from the UK tax authority about his tax return. *See* ECF No. [62] at 9–34. The passport indicates it was issued in London on March 12, 2024, *see* ECF No. [62] at 10, which is consistent with the July 2023 to July 2024 term of the apartment lease, *see* ECF No. [62] at 28. The utility bills and payments also coincide with that period, as they run from July 2023 to June 2024. *See* ECF No. [62] at 15–23. And the tax correspondence, which is dated April 2023, suggests that Plaintiff worked in the UK even earlier than that because it covers the tax year from April 2022 to April 2023. *See* ECF No. [62] at 34.

Those documents demonstrate that, when he filed this lawsuit on March 6, 2024, Plaintiff had an apartment in London for which he set up and paid utilities. They demonstrate that in the two years before he filed this lawsuit, he received income that was taxable in the UK. And they demonstrate that before and since he filed this lawsuit, he has received important mail like tax forms and utility bills at a UK address. Despite their implication that Plaintiff may still be in Miami, the Rodriguez Defendants have not shown that the documents Plaintiff provided are fraudulent and have not submitted their own documents showing that Plaintiff is domiciled in Florida. Accordingly, assessing the totality of the circumstances as it must, the Court finds that those facts, when combined with Plaintiff's sworn statements of intent to reside in the UK indefinitely, adequately establish that Plaintiff is domiciled in the UK for jurisdictional purposes. *See Smith*, 991 F.3d at 1149; *Sunseri*, 412 F.3d at 1249; *Simmons*, 592 F. Supp. at 359; *Bal Harbour Shops*, 645 F. Supp. 3d at 1328. And, as a result, the Court concludes that the Parties are indeed diverse.[5]

---

[5] Defendants have not challenged the amount-in-controversy requirement.

### 2. Standing

While Plaintiff has adequately established complete diversity, that does not end the Court's jurisdictional inquiry. The Gurian Defendants and the Rodriguez Defendants also contend that Plaintiff lacks standing, *see* ECF No. [88] at 8–9; ECF No. [93] at 6–7, and Article III standing is, like complete diversity, a threshold jurisdictional matter, *see Romano*, 120 F.4th at 736; *cf. Stalley*, 524 F.3d at 1232. According to the Gurian Defendants and the Rodriguez Defendants, at all relevant times Plaintiff "was not the owner" of the Drexel buildings, which means he could not have suffered the kind of injury required to establish standing. *See* ECF No. [88] at 8–9; ECF No. [93] at 6–7. The Court agrees.

Looking to the allegations of the Final Amended Complaint, when the Drexel buildings were sold pursuant to the state court's order,[6] Plaintiff did not own them. *See* ECF No. [76] at 8; ECF No. [91] at 7–10. Instead, a corporate entity owned them.[7] For that reason, if there was any injury from the forced sale of the Drexel buildings in March 2021, that injury wronged whichever corporate entity owned them at the time, but not Plaintiff.

Shareholder claims stemming from an injury to a corporate entity are either direct or derivative. *See Freedman*, 963 F.3d at 1132, 1136; *Lewis*, 654 F. Supp. 2d at 1357; *Bank United*, 442 B.R. at 54. If a shareholder brings a claim to enforce a right of action that exists on behalf of a corporation, it is derivative, *see Lewis*, 654 F. Supp. 2d at 1357, and if the

---

[6] The Court takes judicial notice of the records from the underlying state court actions, which are available at https://www2.miamidadeclerk.gov/ocs, the Circuit Court of the Eleventh Judicial Circuit's electronic docket website. *See, e.g.*, *Paez*, 947 F.3d at 652; *In re Delta Res., Inc.*, 54 F.3d at 725; *Navarro*, 192 F. Supp. 3d at 1364; *Jones*, 29 F.3d at 1553; Fed. R. Evid. 201(b)(2).

[7] Although, because of conflicting allegations, it is unclear exactly which one. *See* ECF No. [76] at 24 (alleging that Plaintiff transferred the Drexel buildings from 1560/1568 Drexel LLC to DRO 15R LLC in November 2020); ECF No. [76] at 27 (alleging that the Drexel buildings "had been transferred from 1560/1568 Drexel Ave. LLC to 3003 Indian Creek LLC" by March 2021); ECF No. [76] at 28 (alleging that 1560/1568 Drexel LLC "owned Plaintiff Ofer's real estate located at 1560/1568 Drexel Avenue" in March 2021).

shareholder's alleged injury does not flow subsequently from an initial harm to the company and is separate and distinct from those other shareholders sustained, it is direct, *see Freedman*, 963 F.3d at 1136. The alleged injury here — the deprivation of, or interference with, the owner's interests in the Drexel buildings and their benefits, *see* ECF No. [76] at 28–40 — is derivative because Plaintiff's alleged harm is no different than the harm the corporate entity owner allegedly suffered. *See Freedman*, 963 F.3d at 1136; *Lewis*, 654 F. Supp. 2d at 1357. "Thus, Plaintiff does not have standing to bring this suit directly." *Kammona*, 962 F. Supp. 2d at 1303.

As noted above, it is unclear from the allegations of the Final Amended Complaint which corporate entity owned the Drexel buildings when they were sold pursuant to the state court's order. But whichever entity it was, Plaintiff does not allege that he is bringing his claims on that entity's behalf. *See generally* ECF No. [76]. Thus, he has not pleaded a derivative claim at all, let alone pleaded a derivative claim with the particularity Rule 23.1 requires. *See* Fed. R. Civ. P. 23.1(b)(3). That means Plaintiff has not included even the "general factual allegations of injury" that "can suffice" to establish standing at "the pleading stage of a case." *Muransky*, 979 F.3d at 924. Accordingly, the Court finds that Plaintiff does not have standing to bring his claims for conversion, unjust enrichment, and theft, all of which are predicated on the allegedly improper sale of the Drexel buildings — an injury that belongs to whichever corporate entity then owned them, not to Plaintiff. As a result, Counts I, II, and III of the Final Amended Complaint are due to be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction. *See Stalley*, 524 F.3d at 1232.

As to Counts IV, V, and VI, which Plaintiff asserts against only the Rodriguez Defendants, the Court finds that the same conclusion applies. Like Plaintiff's conversion, unjust enrichment, and theft claims, his leasehold enforcement, ejectment, and breach-of-contract

claims are based, in part, on his allegation that he is the rightful owner of the Drexel buildings. *See* ECF No. [76] at 34–41. But as explained above, according to the allegations of the Final Amended Complaint, when the Drexel buildings were sold pursuant to the state court's order, Plaintiff did not own them. *See* ECF No. [76] at 8; ECF No. [91] at 7–10. And he certainly does not own them now. For that reason, Plaintiff also does not have standing to bring his leasehold enforcement, ejectment, and breach-of-contract claims alleged in Counts IV, V, and VI.

Plaintiff's other arguable basis for standing to bring his claims against the Rodriguez Defendants is his allegation that he owns a construction lien and a leasehold on the Drexel buildings but that the Rodriguez Defendants have neither paid him anything toward what is owed on the construction lien and leasehold nor delivered to him possession of the Drexel buildings. *See* ECF No. [76] at 34–41. But Plaintiff's assertion of a lien or leasehold in the Drexel buildings has already been conclusively decided against him. *See In re DRO 15R LLC*, 649 B.R. 216, 233–36 (Bankr. S.D. Fla. 2022).

In Plaintiff's federal bankruptcy action, Judge Isicoff found that the construction contract that purportedly supported the lien and granted the leasehold was "not a legitimate document" and was instead "manufactured." *See id.* at 233 ("As AJAR pointed out there are an overwhelming number of undisputed facts that compel this Court to find this document is not a legitimate document."). Similarly, Judge Isicoff found that, as evidenced by documents executed by Plaintiff or his corporate entity's authorized agent, "all claims of lien against the" Drexel buildings "had been satisfied." *See id.* at 233–34. Because this Court must give conclusive effect to those findings, *see B & B Hardware*, 575 U.S. at 147–48, the Court finds that Plaintiff has not been injured by a deprivation of a lien or leasehold interest in a way that confers standing to bring his leasehold enforcement, ejectment, and breach-of-contract claims against the

Rodriguez Defendants.  As a result, Counts IV, V, and VI of the Final Amended Complaint are also due to be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction. *See Stalley*, 524 F.3d at 1232.

Because Plaintiff does not have standing to bring any of his six claims against any of the eleven Defendants, I respectfully **RECOMMEND** that the Gurian Motion, **ECF No. [88]**; the First Rodriguez Motion, **ECF No. [93]**; and the Eljaiek Motion, **ECF No. [100]**, be **GRANTED** on the issue of standing.

### B.  Equitable Doctrines

The Gurian Defendants and the Rodriguez Defendants also contend that, even assuming Plaintiff had standing to bring his claims, the Court should not decide those claims because three equitable doctrines bar them.  *See* ECF No. [88] at 9–13; ECF No. [93] at 15–18.  Both the Gurian Defendants and the Rodriguez Defendants argue the *Rooker-Feldman* doctrine bars consideration of Plaintiff's claims because he "effectively is seeking a different outcome based upon the same set of facts that were extensively litigated and adversely decided against him" in the state court lawsuit and in his federal bankruptcy action.  *See* ECF No. [88] at 10–13; ECF No. [93] at 15–18.  The Gurian Defendants add that Plaintiff is collaterally estopped from bringing Counts I, II, and III because those claims seek "to re-litigate issues that were raised" and conclusively decided in the state court lawsuit.  *See* ECF No. [88] at 9–10.  The Court agrees the equitable doctrines of *Rooker-Feldman*, collateral estoppel, or both apply to bar some or all of Plaintiff's claims.

Counts I, II, and III for conversion, unjust enrichment, and theft all hinge on allegations that Defendants breached a post-judgment settlement agreement related to a state-court lawsuit and that they paid inadequate consideration for the Drexel buildings, which Plaintiff alleges

remain his real estate assets.  *See* ECF No. [76] at 27–33; ECF No. [91] at 6–7; ECF No. [98] at

11–15.  Even assuming those allegations are correctly directed at all eleven Defendants,[8] they

involve issues that other state and federal courts have already decided.

As a bankruptcy court in this District noted, Plaintiff argued to the state court that the

sheriff's sale of the million-dollar Drexel buildings for $5 was "inequitable and manifestly

unjust."  *See In re DRO 15R LLC*, 649 B.R. at 236.  But the state court "rejected" Plaintiff's

arguments, which meant "those issues have been finally adjudicated by a different court with

jurisdiction."  *Id.* at 236 n.49.  Filings from the state-court docket confirm that Plaintiff argued

inadequate consideration and unjust enrichment, *see, e.g.*, Case No. 2019-009489-CA-01, DE

115 at 3 (Fla. 11th Cir. Ct. June 14, 2021); Case No. 2019-009489-CA-01, DE 133 at 5 (Fla.

11th Cir. Ct. Aug. 9, 2021), and that the state court rejected those arguments, *see, e.g.*, Case No.

2019-009489-CA-01, DE 142 (Sept. 20, 2021).[9]

Despite Plaintiff's repeated attempts to convince the state trial court to reconsider its

findings and return the Drexel buildings to him, that court did not.  Nor did the state appeals

courts, which so far has had six opportunities to evaluate whether there were errors in the state

trial court's original summary judgment against Plaintiff, its decision to allow the sheriff's sale

of his interests in the corporate entities that owned the Drexel buildings to collect on that

summary judgment, and its later refusal to vacate the sheriff's sale as inequitable, unjust, or

lacking appropriate consideration.  *See, e.g.*, *Ofer v. Opustone, LLC*, No. SC21-1622, 2021 WL

---

[8] It does not appear they are. The Final Amended Complaint includes blanket allegations against all
eleven Defendants, *see* ECF No. [76] at 27–33, but the post-judgment settlement agreement is between
only Plaintiff and Opustone, with Schigiel signing on Opustone's behalf, *see* ECF No. [76-1] at 124–25,
and the sheriff's sale involved only AJAR Holdings, *see* ECF No. [76] at 17.

[9] The Court takes judicial notice of these public filings on the state-court dockets. *See, e.g.*, *Paez*, 947
F.3d at 652; *In re Delta Res., Inc.*, 54 F.3d at 725; *Navarro*, 192 F. Supp. at 1364; *Jones*, 29 F.3d at
1553; Fed. R. Evid. 201(b)(2).

CASE NO. 24-CV-20888-MOORE/Elfenbein

5504581, at *1 (Fla. Nov. 24, 2021); *Ofer v. Opustone, LLC*, No. 3D23-2151, 2024 WL 2043198, at *1 (Fla. 3d DCA May 8, 2024); *Ofer v. Opustone, LLC*, 382 So. 3d 662 (Fla. 3d DCA 2023); *Ofer v. Opustone, LLC*, 381 So. 3d 1223 (Fla. 3d DCA 2022); *Ofer v. Opustone, LLC*, 353 So. 3d 48 (Fla. 3d DCA 2022); *Ofer v. Opustone, LLC*, 352 So. 3d 823 (Fla. 3d DCA 2021).

For this Court to give Plaintiff the relief he seeks, it would have to "review" and "reject" all those decisions of all those state courts. *See Behr*, 8 F.4th at 1212. That is exactly what *Rooker-Feldman* prohibits, even in its narrowest application. *See id.* Plaintiff is the quintessential "state-court loser[] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," *see Exxon*, 544 U.S. at 284, and his injury was "caused by the judgment itself," *Behr*, 8 F.4th at 1212. That is, if the state court had not ordered Plaintiff to turn over his interests in the corporate entities that owned the Drexel buildings to satisfy the debt from the summary judgment against him, he would not have been injured in the ways he alleges in this lawsuit. Accordingly, the Court finds that the *Rooker-Feldman* doctrine bars Counts I, II, and III for conversion, unjust enrichment, and theft.[10] *See id.* at 1212–13.

Issue preclusion also bars Counts I, II, and III, at least as to Defendants AJAR Holdings, Rodriguez, and the Rodriguez Law Firm. As noted above, those Counts are predicated on an injury Plaintiff alleges occurred because Defendants deprived him of possession of the Drexel buildings. For Plaintiff to have an actual injury, however, the Drexel buildings must belong to

---

[10] Although Plaintiff argues the *Rooker-Feldman* doctrine does not apply because defendants procured the state-court judgments through fraud, *see* ECF No. [91] at 10–15, the state court also considered and rejected his assertion that fraud was involved here, *see, e.g.*, Case No. 2019-009489-CA-01, DE 141 (Sept. 20, 2021). The Court notices that judicial act. *See, e.g.*, *Paez*, 947 F.3d at 652; *In re Delta Res., Inc.*, 54 F.3d at 725; *Navarro*, 192 F. Supp. 3d at 1364; *Jones*, 29 F.3d at 1553; Fed. R. Evid. 201(b)(2).

37

him. And he argues that, indirectly at least, they do — as explained above, he both alleges and argues that he has an ownership interest in the Drexel buildings because he owned the corporate entities that owned them. *See* ECF No. [76] at 27–33; ECF No. [91] at 6–7; ECF No. [98] at 11–15.

But in one of Plaintiff's federal bankruptcy actions, to which AJAR Holdings was a party, the Court found that the Drexel buildings "belong[] to AJAR" Holdings. *In re DRO 15R LLC*, 649 B.R. at 236. As Judge Isicoff explained, that "case revolve[d] around a dispute as to ownership of the real property located at 1560 and 1568 Drexel Avenue," *id.* at 222, as this case does at its essence. Because a court has already decided the ownership of the Drexel buildings, that issue is "forever settled as between" Plaintiff and AJAR Holdings, even in the context of a different claim. *See B & B Hardware*, 575 U.S. at 147–48. That conclusion also applies to Rodriguez and the Rodriguez Law Firm because they are in privity with AJAR Holdings.[11] *See Brown*, 611 F.3d at 1332; *Torcise*, 162 F.3d at 1087 n.7.

For the same reason, issue preclusion bars Counts IV, V, and VI for leasehold enforcement, ejectment, and breach of contract as to Defendants AJAR Holdings, Rodriguez, and the Rodriguez Law Firm. Those counts are predicated on Plaintiff's allegations that he owns a construction lien and a leasehold on the Drexel buildings and that the Rodriguez Defendants have neither paid him anything toward what is owed on the construction lien and leasehold nor

---

[11] Both the corporate records Plaintiff attaches to the Final Amended Complaint and those on the Florida Division of Corporations website list the Rodriguez Law Firm as the sole member of AJAR Holdings. *See* ECF No. [76-1] at 103; https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=AJARHOLDINGS%20M230000009340&aggregateId=forl-m23000000934-bffced19-2622-46eb-8757-f2e09647a300&searchTerm=AJAR%20Holdings&listNameOrder=AJARHOLDINGS%20L210001636860 (last visited Jan. 15, 2024). And the Florida Division of Corporations website lists Rodriguez as president of the Rodriguez Law Firm. *See* https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=RONIELRODRIGUEZIVPA%20P040001487140&aggregateId=domp-p04000148714-2527ef71-fa65-444b-9197-bb99e251dbee&searchTerm=roniel%20rodriguez&listNameOrder=RONIELRODRIGUEZIIIMDPA%206843260 (last visited Jan. 15, 2024).

delivered to him possession of the Drexel buildings.  *See* ECF No. [76] at 34–41.  But as the Court has previously explained, the bankruptcy court already conclusively decided Plaintiff's assertion of a lien or leasehold in the Drexel buildings against him.  *See In re DRO 15R LLC*, 649 B.R. at 233–36.  In his federal bankruptcy action, Judge Isicoff found both that the purported construction contract was a fake and that any legitimate claims of lien against the Drexel buildings had been satisfied.  *See id.* at 233–34.  This Court must give conclusive effect to those findings.  *See B & B Hardware*, 575 U.S. at 147–48.

As a result, even if Plaintiff had standing to bring the six claims in the Final Amended Complaint, which he does not, the Court would find that the equitable doctrines of *Rooker-Feldman*, issue preclusion, or both bar them to the extent detailed above.  Accordingly, I respectfully **RECOMMEND** that the Gurian Motion, **ECF No. [88]**; the First Rodriguez Motion, **ECF No. [93]**; and the Eljaiek Motion, **ECF No. [100]**, be **GRANTED**.

The Second Rodriguez Motion, however, is another story.  In the Second Rodriguez Motion, the Rodriguez Defendants argue that the fugitive disentitlement doctrine, an equitable doctrine that limits a fugitive's access to file his own claims in court for refusing to otherwise submit to the court's authority, bars Plaintiff from pursuing the claims in the Final Amended Complaint.  *See generally* ECF No. [95].  The Court cannot consider the merits of that argument, however, because "Rule 12(g) specifically prohibits a party that has previously filed a motion to dismiss from filing a second pre-answer motion to dismiss raising an omitted defense that could have been presented in the first motion to dismiss."  *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *see also* Fed. R. Civ. P. 12(g)(2) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but

omitted from its earlier motion.").

The Rodriguez Defendants could have raised their fugitive disentitlement doctrine argument in the First Rodriguez Motion, but they did not. *See generally* ECF No. [93]. Because that argument does not fall within one of the exceptions "provided in Rule 12(h)(2) or (3)," *see* Fed. R. Civ. P. 12(h)(2) (identifying three arguments parties can make in a pleading, by a Rule 12(c) motion, or at trial); Fed. R. Civ. P. 12(h)(3) (requiring courts to dismiss if there is no subject-matter jurisdiction), Rule 12(g)(2) bars them from making it in a successive Rule 12 motion, *see Skrtich*, 280 F.3d at 1306; Fed. R. Civ. P. 12(g)(2). Accordingly, I respectfully **RECOMMEND** that the Second Rodriguez Motion, **ECF No. [95]**, be **DENIED**.

## C.  Merits

All eleven Defendants contend that, even if Plaintiff has standing to bring his claims and the equitable doctrines of *Rooker-Feldman* and issue preclusion do not apply, the Final Amended Complaint does not meet the procedural and merits requirements to survive a motion to dismiss. More specifically, the Gurian Defendants argue Plaintiff failed to state a claim upon which relief can be granted because his claims either "are not properly pled, inconsistent, and contradicted by the exhibits" or they "fail[] as a matter of law." *See* ECF No. [88] at 7–8. The Rodriguez Defendants join the argument that the Final Amended Complaint fails to state a claim, and they add that the Final Amended Complaint fails to comply with Federal Rules of Civil Procedure 8 and 10 because it is a shotgun pleading. *See* ECF No. [93] at 1. And Defendant Eljaiek argues that Plaintiff failed to state a claim particularly as to him because the Final Amended Complaint relies "on broad, conclusory statements that fail to tie specific, wrongful acts to" him individually. *See* ECF No. [100] at 4. For the most part, the Court again agrees.

As already discussed, Counts I, II, and III for conversion, unjust enrichment, and theft are

based on allegations that Defendants have breached the post-judgment settlement agreement and have improperly deprived Plaintiff of possession of the Drexel buildings.  *See* ECF No. [91] at 3–7.  But as Plaintiff himself admits in the Final Amended Complaint, the "breach" he alleges occurred "before said settlement agreement was even executed."  *See* ECF No. [76] at 28.  And of course, there generally can be no "breach" of an agreement that has not yet been executed.  *See, e.g.*, *Kol B'seder, Inc.*, 261 F. Supp. 3d at 1266 (noting a valid and enforceable contract is necessary to sustain a breach-of-contract action).  The dates of the sheriff's sale and the settlement agreement confirm that there could have been no breach: the sale of the Drexel buildings (and subsequent transfer of those buildings to AJAR Holdings) occurred in March 2021, *see* ECF No. [76-1] at 124–25, but the settlement agreement Defendants allegedly breached by depriving Plaintiff of the Drexel buildings was executed in April 2021, *see* ECF No. [76] at 17.

To the extent Plaintiff argues the settlement agreement should be given effect before it was written and signed, Florida's statute of frauds bars such an interpretation because the Parties explicitly contemplated performance beyond one year. *See, e.g.*, ECF No. [76-1] at 124–25 (contemplating at least 24 monthly payments); *Taxinet Corp.*, 114 F.4th at 1231; Fla. Stat. § 725.01; *Browning*, 165 So. 3d at 666; *Movie Prop Rentals LLC*, 704 F. Supp. 3d at 1312; *OJ Com., LLC*, 359 F. Supp. 3d at 1173–74. And to the extent Plaintiff argues the settlement agreement applies to any Defendants other than Opustone (who is a party to the agreement) and Schigiel (who signed the agreement as Opustone's representative), traditional principles of Florida contract law do not support such a conclusion. *See, e.g.*, *Arthur Andersen LLP*, 556 U.S. at 631; *ConSeal Int'l*, 488 F. Supp. 3d at 1268–70.

For those reasons, even if Plaintiff had standing and the equitable doctrines of *Rooker-*

41

*Feldman* and issue preclusion did not apply such that the Final Amended Complaint was not due to be dismissed pursuant to Rule 12(b)(1), Plaintiff has still failed to state claim under Rule 12(b)(6) as to Counts I, II, and III.[12]

Finally, the Court agrees with the Rodriguez Defendants that Plaintiff has not properly pleaded his claims.  As the First Rodriguez Motion notes, the Final Amended Complaint is a "disjointed, rambling series of allegations" that incorporates immaterial factual allegations into every claim and effectively accuses all eleven Defendants "of the same alleged conduct under a multitude of theories," which means Defendants cannot "discern exactly what is being alleged and against whom in each of the counts."  *See* ECF No. [93] at 7–9.  While the Final Amended Complaint does not fit exactly within the "most common type" of shotgun pleading because each count does not adopt *all* the allegations of the preceding counts, *see Weiland*, 792 F.3d at 1321, it comes close: Plaintiff reasserts the same factual allegations for each count, which stretch across 23 pages and 87 numbered paragraphs, without specifying which facts directly support which count, *see generally* ECF No. [76].

But the Final Amended Complaint does not just come close to committing "the mortal sin of re-alleging all preceding counts," *id.* at 1322, it also falls into at least two other categories of shotgun pleading. It is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," and it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *See id.* at 1322–23 (footnotes omitted).  And as the Eleventh Circuit has made clear, "shotgun complaints . . . are altogether unacceptable," *see Cramer*, 117 F.3d at 1263, and should

---

[12] This conclusion applies to all eleven Defendants. But the Court also notes that, as to Defendant Eljaiek, there is an additional reason the Final Amended Complaint fails under Rule 12(b)(6): because, as the Eljaiek Motion notes, Plaintiff has not alleged any wrongful acts specific to Defendant Eljaiek. *See* ECF No. [100] at 4; ECF No. [76] at 1–33.

not be tolerated, *see Jackson*, 898 F.3d at 1357.

The typical approach to a shotgun pleading is to require a party to correct it.   *See Johnson*, 162 F.3d at 1333. But Plaintiff has been given at least four previous opportunities to amend his claims and factual allegations; in fact, this Court has already denied Plaintiff's attempt to further amend the Final Amended Complaint for precisely that reason.  *See* ECF No. [84] at 1–5.  Even though Plaintiff is proceeding *pro se* and courts hold pleadings filed by *pro se* parties to "a less stringent standard" than those drafted by attorneys, *see Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), it would not be in the interests of justice to allow any further amendments to the Final Amended Complaint.

Accordingly, even if Plaintiff had standing, the equitable doctrines of *Rooker-Feldman* and issue preclusion did not apply, and Plaintiff had not failed to state a claim (as to Counts I, II, and III at least), Plaintiff would still have failed to satisfy the pleading requirements of Rule 8 and Rule 10.  And because it would not be in the interests of justice to allow any further amendments to the Final Amended Complaint, the Court would exercise its "authority to dismiss" Plaintiff's "shotgun pleading on that basis alone." *See Jackson*, 898 F.3d at 1357.

As a result, even if Plaintiff had standing to bring the six claims in the Final Amended Complaint (which he does not), and even if the equitable doctrines of *Rooker-Feldman* and issue preclusion did not bar Plaintiff's claims (which they do), the Final Amended Complaint does not properly plead a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6). I, therefore, respectfully **RECOMMEND** that the Gurian Motion, **ECF No. [88]**; the First Rodriguez Motion, **ECF No. [93]**; and the Eljaiek Motion, **ECF No. [100]**, be **GRANTED**.[13]

---

[13] Plaintiff also filed the Motion for Hearing, in which he asks the Court to hold a hearing on the four Motions to Dismiss or, in the alternative, to refer the motions to the undersigned for a Report and Recommendation.  *See* ECF No. [119] at 3.  Local Rule 7.1 gives Plaintiff the right to make that request

CASE NO. 24-CV-20888-MOORE/Elfenbein

IV.    **CONCLUSION**

For the reasons explained above, I respectfully **RECOMMEND** that:

1.    the Gurian Motion, **ECF No. [88]**, be **GRANTED**;

2.    the First Rodriguez Motion, **ECF No. [93]**, be **GRANTED**;

3.    the Eljaiek Motion, **ECF No. [100]**, be **GRANTED**;

4.    the Second Rodriguez Motion, **ECF No. [95]**, be **DENIED**; and

5.    the Motion for Hearing, **ECF No. [119]**, be **DENIED AS MOOT**.

The Parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge.  Failure to timely file objections shall bar the Parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the Parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on January 15, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

---

and also gives the Court the right to deny it.  *See* S.D. Fla. L.R. 7.1(b)(1), (2).  Because the Court can resolve the Motions to Dismiss without a hearing and this is the Report and Recommendation Plaintiff requested, I respectfully **RECOMMEND** that the Motion for Hearing, **ECF No. [119]**, be **DENIED AS MOOT**.

CASE NO. 24-CV-20888-MOORE/Elfenbein

cc:    All Counsel of Record

       Raziel Ofer, *PRO SE*
       3701 Degarmo Ln
       Miami, FL 33133
       646-431-7934
       Raz.Ofer2@gmail.com