UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No.: 1:24-CV-20888-KMM

RAZIEL OFER,
    Plaintiff,

vs.

STEPHEN T. MILLAN, individually,
MILLAN LAW FIRM PA, a Florida for Profit Corporation,
RONIEL RODRIGUEZ IV, individually,
RONIEL RODRIGUEZ IV PA, a Florida for Profit Corporation,
AJAR HOLDINGS LLC, a foreign limited liability company,
STEVEN E. GURIAN, individually,
SANTIAGO ELJAIEK, III, individually,
MARIN, ELJAIEK, LOPEZ, MARTINEZ PL, a Florida
Professional Limited Liability Company,
STUART R. KALB, individually,
ERIC SCHIGIEL, individually,
OPUSTONE, a Florida for Profit Corporation.
    Defendant(s).
_____/



FILED BY_____D.C.

JAN 29 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

### PLAINTIFF OFER'S OBJECTION TO THE COURT'S REPORT AND RECOMMENDATION ON MOTION TO DISMISS AND MOTION FOR HEARING [ECF NO. 121]

Plaintiff, Raziel OFER ("OFER" or "Plaintiff"), as a self-represented litigant, enters his objections to the Magistrate's Report and Recommendation of the Court on the various motions to dismiss recommending a dismissal of the Final Amended Complaint. In response and objection to the Report and Recommendation, OFER states the below points in support:

Introduction

    This Court reviewed five motions, four (4) motions to dismiss, the Gaurin Motion [ECF No. 88], the First Rodriguez Motion [ECF no. 93], the Second Rodriguez Motion [ECF No. 95], the Eljaiek Motion [ECF No. 100] (together, the "Dismissal Motions"), and the Plaintiff's Motion

For Hearing [ECF No. 119]. The Dismissal Motions introduces various theories for the dismissal of the Final Amended Complaint ("Compliant"). Of these, the Defendants introduced theories of dismissal based on lack of diversity, lack of standing, failure to state a claim, shotgun pleading, and the equitable doctrines of Fugitive Disentitlement, *Rocker-Feldman*, Issue preclusion and Claims Preclusion. The Court recommended that the Complaint be dismissed as to all counts 1 through 6.

Standard of Review For Motion To Dismiss

To survive a motion to dismiss, a pleading must set out facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Consequently, a plaintiff must imbue its pleading with "enough heft to show that the pleader is entitled to relief." *Id.* at 557, 127 S.Ct. 1955. And plausibility is the test for that heft: The "well-pled allegations must nudge the claim 'across the line from conceivable to plausible." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009)(quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). To do so, the complaint must contain "more than labels and conclusions," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, and enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Plaintiffs receive the benefit of reasonable factual inferences, "unwarranted deductions of fact are not admitted as true." *Aldana v. Del Monte Fresh Produce, N.A. Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, we do not credit bare legal conclusions. See *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Dismissal As To Counts I, II and III

The Court recommends that Counts I, II, and III of the Complaint be dismissed for findings

of the Magistrate that Ofer cannot have standing on these Counts because a corporate entity, instead of him, owned the building, thus he could not have suffered a direct injury. It was determined by the Magistrate that the injuries which were suffered by Ofer flowed directly from and belong to the entity which owned the Drexel Property at the time of injury, to wit, the judicial sheriff levy sale of March 2021. Based on this finding, the Court determined that Ofer lacked standing on the conversion, unjust enrichment and theft claims because the claims did not properly belong to him, but the entities which the injury stemmed from, resulting in a lack of subject matter jurisdiction on the basis of lack of standing.

Further, the Magistrate recommended the dismissal of the same on an alternative basis as well. It found that issue and claims preclusion applied along with the *Rocker-Feldman* doctrine. This finding is a result of the determination that the same factual basis and claims had been previously argued in the state courts of Florida and the bankruptcy court of this district and another court had previously decided issues and claims based upon inadequate consideration, theft, improper taking and unjust enrichment, finding that various cases contained pleadings previously arguing those issues and finding against Ofer. As a result, the recommendation was dismissal.

OFER Has Standing To Bring Claims

Defendants alleged that OFER does not have standing to bring the claims here because Ofer is not the owner of the property. First, "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). This case-or-controversy requirement, embodied in the doctrine of standing, "confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). Under settled precedent, the "irreducible

constitutional minimum" of standing consists of three elements, (i) the plaintiff must have suffered an injury in fact, (ii) the defendant must have caused that injury, and (iii) a favorable decision must be likely to redress it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The party invoking the jurisdiction of a federal court bears the burden of establishing these elements to the extent required at each stage of the litigation. *Id.* at 561, 112 S.Ct. 2130. Thus, at the motion-to-dismiss stage, Ofer bears the burden of alleging facts that plausibly establishes his standing. See *Ashcroft v. Iqbal*, 556 U.S. 662, 677–84, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Salcedo v. Hanna*, 936 F.3d 1162, 1168 (11th Cir. 2019).

The "foremost" standing requirement is injury in fact. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). An injury in fact consists of "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Defs. of Wildlife*, 504 U.S. at 560, 112 S.Ct. 2130 (quotation marks omitted). A "concrete" injury must be "de facto"—that is, it must be "real, and not abstract." *Spokeo*, 136 S. Ct. at 1548 (quotation marks omitted). A "particularized" injury "must affect the plaintiff in a personal and individual way." *Id.* (quotation marks omitted). Each subsidiary element of injury—a legally protected interest, concreteness, particularization, and imminence—must be satisfied. See *id.* at 1545; *Defs. of Wildlife*, 504 U.S. at 560, 112 S.Ct. 2130. As a general matter, tangible injuries qualify as concrete. See *Spokeo*, 136 S. Ct. at 1549.

Ofer has identified the concrete injury which he has suffered and that the Defendants caused, or aided and abetted in causing, the injury which there is no question that relief of this Court can redress. Specifically, Ofer alleges that the Defendants were involved at various levels of the theft and conversion of his property and the benefits derived from it. He specified a concrete loss of real property valued in the tens of millions, in excess of $50M, and rental income in the

tens of millions. This case can easily be described as the biggest miscarriage of Justice in US history. A core constitutional legally protected interest is that of property rights and the arbitrary loss against them through fraud and theft. Accordingly, the elements of standing have been met at a minimum for Article III purposes. Next, the Court must consider Ofer's standing to assert a claim in this matter. This case involves extrinsic fraud, that has never before mentioned before any Court, as it's newly discovered evidence, an evidence revealed by checking the records of the postal service. These issues are being investigated by the FBI and the plaintiff is prepared to reveal to the Court, for in camera inspection, the details of an FBI special agent involved with the investigation.

"[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Dillard v. Baldwin County Comm'rs*, 225 F.3d 1271, 1275 (11th Cir.2000)(citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Florida Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir.1999); and *EF Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 983 (11th Cir.1990)). In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1223 (11th Cir.2004)(quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "[E]ach element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Florida Public Interest Research Group v. EPA*, 386 F.3d 1070, 1083 (11th Cir.2004) (quoting *Bischoff,* 222 F.3d at 878 (internal quotation marks omitted)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992))). Accordingly, when a question about standing is raised at

the motion to dismiss stage, "it may be sufficient to provide 'general factual allegations of injury resulting from the defendant's conduct." *Id.* (quoting *Bischoff*, 222 F.3d at 878).

As previously stated, Ofer suffered concrete injury at the hands of the Defendants' conduct. Ofer is a direct beneficiary of the benefits derived from the property such as the rental income. Further, there is the matter of the millions of dollars in renovation funds and the funds he personally invested when purchasing the property in cash in 2013, which he personally placed into the property for improvements. Ofer has consistently made showings and pleaded that those funds were to be returned to him as evidenced by the multitude of liens which he had recorded against the property which shows a claim owed to Ofer. Those claims are separate and distinct from any entity which owns the Drexel Property and were assigned to Ofer, thus showing he, himself, had suffered an injury separate and distinct from the entities which owned the property. Although the property was titled to an entity, Ofer was a stakeholder in the entity indirectly and derived direct income benefits generated from the property which were distinct to him, through assignments of the right to collect income from the property[1], and not the entity which owned the property along with the claims to recoup his investments related to the property's improvement. Accordingly, Ofer maintains standing in this matter to assert a claim and should be allowed to amend his complaint to address the standing of the two distinct benefits of the improvements  and direct income from the property which is specific to him and no other. Ofer confirms that he is constantly in touch with one of America's top Lawyers, Alan Dershowitz, who is closely following this case and advising Ofer, including on the antisemitic affidavits against Ofer filed before Judge Isicoff which she threatened Ofer with sanctions if he mentions or show these affidavits to anyone. Ofer

---

[1] The assignment of the right to co llect income from the property was first filed in the matter of *DRO 15R, LLC, et. al. v. Ajar Holdings, LLC, et. al.*, case no. 2021-014716-CA-01 on June 30, 2021 in the Second Amended Complaint filed there, by virtue of the Irrevocable Assignment between 1560/1568 Drexel Avenue, LLC and Raz Ofer and is a matter of public record.

is a son of holocaust survivors, who does not take antisemitic comments lightly. The affidavits by the other party, Judge Isicoff's partners in this saga, describe ofer as a wealthy jew that owns too many buildings in Miami, like most jews, and that we (the other party), must do all we can to confiscate these properties from the jews. These are just some of the antisemitic comments, other comments are suggesting that Ofer has quite a few jewish tenants......Similar comments to those made by the nazis in Germany. I for one try to forget what happened at the holocaust and I invest substantial amounts in Berlin, as if to say 'despite what happened to our parents, the jews are back buying properties in Berlin'. America is built on the idea of hard work and encourage success, not about Jealousy....

## Failure to State An Claim For Conversion And Theft

The Court also found that the Complaint did not allow for correctly stating a claim as to the conversion and theft counts. Specifically, Defendants alleged that the causes of action for conversion and theft are not properly pleaded, inconsistent and contradicted by the exhibits. In Florida, a claim for conversion entails an unauthorized act that deprives a person of his property permanently or for an indefinite time. *Shelby Mut. Ins. Co. v. Crain Press, Inc.*, 481 So.2d 501, 503 (Fla. 2d DCA 1985); see also *Marine Transp. Servs. Sea-Barge Group, Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1140 (11th Cir. 1994)("In Florida, the tort of conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time.") "A conversion occurs when a person who has a right to possession of property demands the property's return, and the demand is not or cannot be met." *Id.* Defendants' attempt to evade the issue of conversion by stating that they never had possession of the property, but they disregard

the two factual components which fall within the four corners of the Complaint.

First, the Defendants were alleged to be a part of a conspiracy which originated prior to the filing of the case. The Defendants Rodriguez, Rodriguez PA, Millan, Millan, PA And Kalb disseminated information specific to Ofer when they recruited the CO-Defendants in order to ***file and prosecute*** the Opustone action. ***See Complaint at paragraph 31.*** The allegation, which must be taken as true, places the Defendants within the circle of criminals who worked to deprive Ofer of the property and *the benefits derived from the property* such as the rental income. The conspirators worked together in a scheme to deprive him of the property, and associated benefits, with the intent to retain the property and its associated benefits, such as the income derived from and recovery and increase in value for of the improvements made, for an indefinite period of time, converting it all to their own use. The essential element of conversion is the deprivation of property or benefit against the rights of the owner of the property or benefit. IN fact, Judge Isicoff, awarded a $50M property to the defendant for $5.00 (Five USD) that they paid, on the excuse that Ofer made a typo error on the deed when transferring it from Drexel to one of his other entities.

More specifically, "Conversion is an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." *Warshall v. Price*, 629 So. 2d 903, 904 (Fla. 4th DCA 1993) (internal quotation marks omitted). "[T]o state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011). The essence of an action for conversion is "not the acquisition of the property of the wrongdoer, ***but the wrongful deprivation of a person of property to the possession of which he is entitled***." *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 33 So. 2d 858, 860 (1948). Thus, it is the conduct of the Defendants' actions exerting dominion over the property and derived

benefits, as a participant in the conspiracy, which is the subject of the conversion.

Ofer alleged the primary wrongdoing by Defendants. The Defendants were alleged to have knowledge of the scheme through the dissemination of the information by Millan and Millan PA and the recruitment the co-Defendants by Rodriguez, Rodriguez PA and Kalb due to the Defendants Marin PL and Eljiak's prior business dealings with Rodriguez and Rodriguez PA. Finally, Ofer alleged that the Defendants gave substantial assistance in the form of the filing of the Opustone action and prosecuting it to final judgment to facilitate the conversion of the property and the benefits derived from it. As a pro se filer, the complaint should be read liberally.

Failure To State a Claim For Unjust Enrichment

Defendants sole reason for opposing the inclusion of the cause of action for unjust enrichment is that Ofer did not convey title to the property to the Defendants nor confer any benefits on the Defendants. This reasoning must fail. "The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So.2d 876, 879 (Fla. 3d DCA 1996). "At the core of the law of restitution and unjust enrichment is the principle that a party who has been unjustly enriched at the expense of another is required to make restitution to the other." *Gonzalez v. Eagle Ins. Co.*, 948 So.2d 1, 3 (Fla. 3d DCA 2006).

As previously stated, the Defendants were alleged to be a part of the conspiracy to deprive Ofer of his property and the benefits derived therefrom, e.g. the rental income and increased value of the property due to the improvements made. Ofer participated in a settlement agreement with

the Defendant, Opustone, which did confer a benefit on the Defendants such as payments in settlement of the dispute. It later turns out the settlement agreement was nothing more than a device of the extrinsic fraud[2] portrayed by the Defendants to keep Ofer from presenting his case through fraud and falsely claiming a compromise to get a tactical advantage. Further, the satisfaction of the judgment and the retention of the property and the benefits derived from the property, is inequitable. The judgement resulted in a liability to Ofer of just over $105,000.00. The real property has a market value of $50 million. There is over $49 million in surplus equity. With the judgement being satisfied and the equity of that magnitude being present and not returned, it is without question that the Defendants were unjustly enriched.

Simply put, Ofer conveyed the benefit of a settlement in the matter to the parties in exchange for a cessation of execution against his assets. The benefit of the payment was conveyed upon the Defendants in the funds paid through the settlement agreement of a single $10,000.00 payment and the funds release from the $120,000.00 plus supersedeas bond paid by Ofer. A part of the settlement agreement which was a material inducement to Ofer was the cessation of collection efforts which Ofer took as his various assets would cease to be the subject of enforcement actions. The Defendants Rodriguez and Rodriguez PA were the parties primarily responsible for the discussions on the settlement agreement and Opustone and Schigel were the operative mechanism to portray the Settlement. The payments made under the settlement agreement itself and the payment of the settlement were benefits conveyed for the cessation of execution and the Defendants got the benefit of the payment, yet continued to execute through

---

[2] "Extrinsic fraud involves conduct which is collateral to the issues tried in a case. . . . [T]his Court has defined extrinsic fraud as the prevention of an unsuccessful party [from] presenting his case, by fraud or deception practiced by his adversary; keeping the opponent away from court; falsely promising a compromise; ignorance of the adversary about the existence of the suit or the acts of the plaintiff; fraudulent representation of a party without his consent and connivance in his defeat; and so on." *Fair v. Tampa Electric Co.*, 158 Fla. 15, 18, 27 So. 2d 514, 515 (1946).

other co-conspirators and derived the benefit of the Property's $50 million value, plus the rental income, without just compensation.

**In fact, the defendants paid $5.00 (Five dollars) for a property worth in excess of $50M. This is the biggest miscarriage of Justice in US history, no Court in the US can upheld such gross corruption. It is a huge waste of Court resources to bring this case in front of the 11th Circuit and the US Supreme Court.**

Although Ofer is acting PRO SE, I'm being advised by top US attorneys. No attorney would enter appearance to a case involving a Judge's corruption., but Alan Dershowitz, due to his giant reputation would. When I emailed Isicoff once that Dershowitz would attend the next hearing, she cancelled the hearing within 5 minutes, knowing that if Dershowitz comes, than surely CNN and Fox news will be waiting outside to hear why he came to Court, she was terrified. SHe threatened all my other lawyers, but she knew she can't threaten Dershowitz or he would call president Biden.

<u>Counts IV, V and VI are Applicable</u>

The Magistrate recommended that counts IV, V and VI be dismissed on grounds of standing, issue and claims preclusion and the *Rocker-Feldman* doctrine. Mainly, the Court found its support in the claims before bankruptcy court and the findings of Judge Isicoff related to the CDI Claims of Lien and the Construction Agreement between CDI and Drexel signed in 2015. The contention to this entire basis is that the Construction Agreement is allegedly "illegitimate document" and there is no independent basis for the liens because they have all been allegedly satisfied. The findings of the Magistrate are erroneous because of two distinct facts, (i) the bankruptcy court never held that the CDI claim of liens were invalid, and (ii) the Construction

Agreement and the CDI Claim of Liens, recorded after the bankruptcy case was closed, were predicated on later filed CDI claims of lien recorded in March 2024 which were never adjudicated in any court.

We must first start with specific findings of the bankruptcy court related to the Magistrate's findings. The statement of findings used by the Court is not conclusive as the Court presupposes. The Magistrate found that the bankruptcy court ruled on the validity of the claims of lien which are being relied upon in this matter. That contention is *absolutely incorrect*. Further, the bankruptcy court had no jurisdiction to make some of the findings and rulings that it did regarding the construction agreement and claims of liens which flowed from it, in fct, the BK Court didn't make such findings, the opposite is true. The magistrate failed to account for the transcript of the hearing on reconsideration of that court's ruling on the summary judgment in the adversarial hearing, where Judge Isicoff clarified that if she rules that the property is not a part of the DRO bankruptcy estate, which she did as Ofer made a typo error on the deed he signed, then she would lack subject matter jurisdiction to make any rulings on non-estate matters. Instead, the bankruptcy court went ahead invalidating both the construction agreement between non-parties Creative Directions, Inc.'s ("CDI") and 1560/1568 Drexel Avenue, LLC's, and the claims of liens supported by it, awarding the defendants $50 million in real property for the $5.00 (Five Dollars). However, the Bankruptcy Court clarified that these ruling are valid only in case that she rules that DRO (an entity owned by Ofer) is the owner of the property, which she didn't, as she rules that Ajar, an entity owned by the defendants own the property in exchange to the $5.00 (Five (USD) they paid for a $50M property. The magistrate overlooked Judge Isicoff's interpretation of her ruling, as transcribed at the motion for reconsideration, which clearly contradicts the Magistrate interpretation of Isicoff's ruling. I trust tht by now, the Magistrate would confirm her obvious

error.

As a threshold matter, we must look to the bankruptcy court's limited jurisdiction which stops at the debtor's estate. The bankruptcy ruling that is relied upon by the Magistrate was determined and issued by a court which only had the power to determine matters concerning the debtor estate of DRO. Once the property was determined to not be owned by DRO, the inquiries stop and any adjudication on matters beyond the scope of the estate become improper. When we look at Judge Isicoff's ruling on the construction agreement between CDI and Drexel, the bankruptcy court had no jurisdiction to make any ruling on the agreement because it does not affect the estate. Once the property was determined not to be the debtor's, then all jurisdiction over matters ceased. The bankruptcy court had the power to determine if the property was part of the estate of the debtor, but once that court determined it was not, its jurisdiction ended. As above, Judge Isicoff later admitted she had no jurisdiction if DRO wasn't the owner. I trust that the magistrate made an innocent error when she didn't read the transcript of the motion for reconsideration, in which Isicoff clarified the above.

Clearly, the magistrate is a very capable, competent and honest Judge, who in this case made an obvious fatal error.

Examine the matters there. The parties to the contract were not involved in that hearing determination. Drexel and CDI were not represented in that matter and were not parties in that case. In fact, the ruling of Judge Isicoff expressly ruled that if Drexel was a party then it would have been required to be joined to the action. Additionally, CDI was not even involved. The bankruptcy court invalidated a contract that was not part, nor property of the estate, an improper determination which that court had no jurisdiction to make. The ruling affected the right of a non-party as it has done here. Again, Isicoff clarified her judgment wasn't clear, as she had no

jurisdiction to rule on any lien or construction agreement if DRO wasn't found to be the owner.

Next, we focus on the liens themselves and the findings that they were satisfied with. The liens cover work commencing in 2015 and end in the various dates as indicated in the various liens namely between 2019 and 2021. The Court focused on the CDI affidavit which claims all work has been completed between the time of 2017 and 2019. There were two notices of termination of Notice of Commencements ("NOC") filed. In many cases, such notice is required when financing is taken against real property and a mortgage is recorded to preserve a lender's priority in the lien seniority structure, in such a case, an NOC is terminated and at the same time a mortgage is recorded, followed by a new NOC which is recorded at the same time, in order to protect the interest of contractors who are performing work subject to the permits issued by the building department. In this case, the NOCs filed preserved priority on the work that was performed on the face of the claims of lien, that being since 2017 and past 2019.

The law is clear that agreements supporting the lien do not have to be in writing. Fla. Stat. §713.01(5) of Florida's mechanic's lien law defines a contract as including agreements which are "written or ***unwritten***, express or *implied*," [emphasis added]. For this Court to find no contract support exists is clear error as an implied contract can be the basis for a lien. It is agreed that a contract implied in law, however, is not really a contract. Because a contract implied in law is not a contract, but the mechanic's lien law requires one, a lien is not available where there is only a contract implied in law. *CDS & Assocs. of the Palm Beaches, Inc. v. 1711 Donna Rd. Assocs.*, 743 So. 2d 1223 (Fla. 4th DCA 1999). On the other hand, a contract implied in fact is an enforceable contract, *CDS* at 1224, and accordingly satisfies the contract requirement of this State's lien law. Common examples of contracts implied in fact are where a person performs services at another's request, or "where services are rendered by one person for another without his expressed request,

but with his knowledge, and under circumstances" fairly raising the presumption that the parties understood and intended that compensation was to be paid. *Lewis v. Meginniss*, 30 Fla. 419, 12 So. 19, 21 (Fla. 1892). In these circumstances, the law implies the promise to pay a reasonable amount for the services. *Lamoureux v. Lamoureux*, 59 So. 2d 9, 12 (Fla. 1951); A.J. v. State, 677 So. 2d 935, 937 (Fla. 4th DCA 1996); *Dean v. Blank*, 267 So. 2d 670 (Fla. 4th DCA 1972); *Solutec Corp. v. Young & Lawrence Assoc., Inc.*, 243 So. 2d 605, 606 (Fla. 4th DCA 1971). To the extent that the Construction Agreement alone does not support the liens in the mind of the Court, then the conduct of CDI performing work on the property does. It's a simple fact, CDI performed the work on the property which, at the time the work was performed, Drexel owned the property. The Court found this fact when it said its review uncovered the public record reflects the CDI's affidavit claimed completed work, but only for a specific period of time not covering the entirety of the period of Ofer's claim. As such, the CDI Claim of liens are supported. Once again, Isicoff later confirmed that any ruling she made only applied if she found that DRO is the owner of the property, which she didn't.

Relying on the fact that the agreement is valid implied in fact, the building department records of Miami Beach, FL Building Department suffice as support for the claim of lien. The building department records (permits) between CDI and Drexel are proof of the existence of the mutual understanding for work to be completed. The law provides that building department records, such as permits, can be used in lieu of an NOC, as it contains the same details, contractor name, scope of work, dates, in leu of an NOC to support the validity of a claim of lien[3].

---

[3] The aforementioned is supported by Judge Isicoff's statements made in the transcript of the motion for reconsideration. This looks at the context in which the rulings were made, being that Judge Isicoff had no jurisdiction to look at the validity of the various claims of liens, nor the construction agreement after they ceased to be in question as a component of the bankruptcy estate. There is no dispute that Ofer bought the Drexel property in cash in 2013, for over $4 million and spent additional $9 million renovating it. The defendants are fighting to hold on to a property now worth in excess of $50 million, for the $5.00 they 'PAID' for it. If this is a miscarriage of justice from their point of view, Ofer prepared to pay them back the $5.00 plus interest, for a total of $5.27.......So that they are made whole for

Finally, we look at the 2015 notice of commencement. The NOC gives rise to the fact that improvements are being made to the property and there is a potential for money being owed to a contractor or anyone working under or through it, it acts in the same way as a lien. In *Symons Corp. v. Tartan–Lavers Delray Beach, Inc.*, 456 So.2d 1254, 1259 (Fla. 4th DCA 1984), purpose served by the notice of commencement was explained, "[t]hough the Notice of Commencement was originally required to trigger a commencement date from which to measure time limitations under the Mechanic's Lien Law, the information contained in the Notice of Commencement provides all the details necessary to complete a Notice to Owner. Indeed, Section 713.13(1)(a), Florida Statutes, requires with Notice of Commencement information including the name and address of the owner and contractor. Thus, the legislature contemplated that the Notice of Commencement would provide the lienor with the current names and addresses of the owner and contractor, so that the lienor could properly mail the Notice to the Owner. If no Notice of Commencement was ever posted or recorded by the owner as mandated by the statute, a lienor may have difficulty in obtaining the names and addresses of the owners and contractor." It is clear here that the notice of commencement is to give notice to parties to the transaction and to any third parties of interests which may exist concerning the property. Notice of commencements can be substituted by building department records such as permits, *as building department records of a municipality*, are able to be relied upon as notice. *Roof Structures, Inc., v. Picou*, 544 So.2d 1138, 1139 (Fla. 4 DCA 1989). However, as previously stated, building records (Permits) can themselves be relied upon for confirmation of notice as well in the absence of a notice of commencement. *Id.* An NOC can be terminated in 3 ways:

1. A notice of termination is filed.

---

their real damages that arguably exist.

2.  After one year.

3.  When a project is completed and the applicable permit issued by the bujilding department is closed.

In this case the 2015 NOC has never been terminated. There were two other NOCs, which were terminated, but not the one from 2015. As above, all the work between these dates are protected by the 2015 NOC. In addition, a lien is valid even without an NOC as confirmed by Isicoff, due to the building department records (Permits). Even if a lien is terminated, a construction agreement remains valid, as it was signed when the lien was valid, regardless of the fact that the lien was valid. A lien is only valid for one year unless a lawsuit to enforce it filed to enforce it, which I did. In addition, a construction agreement is valid even without a lien due to the ability to rely on building department records.


## *Rocker-Feldman* Inapplicable Here

The Defendants assert the *Rooker-Feldman* doctrine applies in this matter. The Defendants are claiming that this Court is precluded from reviewing the matter due to the claims being "inextricably intertwined" with the claims adjudicated in state court. *May v. Morgan Cnty., Georgia*, 878 F.3d 1001, 1002 (11th Cir. 2017). As previously discussed, the claims raised here were never argued in state court leaving the only possibility that the claims are materially tangled in the web of claims raised in the state court. Under a *Rooker–Feldman* analysis, the Court looks at the actual arguments of the parties and the issues decided in state court. See *Datz v. Kilgore*, 51 F.3d 252, 254 (11th Cir.1995). If the defendants claims that these issues have been adjudicated by a State Court, than why they insisted that the Bankruptcy Court must adjudicate these issues. It is clear that the defendants are attempting to mislead this Court. Ofer claims that even if the matters

are intertwined with each other, the application of the *Rooker-Feldman* doctrine is inapplicable. In particular, the state court never ruled and couldn't have ruled on liens recorded in March 2024 after the termination of the bankruptcy proceedings which occurred in 2023. The State Court couldn't have ruled on the CDI lien and construction agreement as they've been assigned.

There are several exceptions to the doctrine which have been promulgated by courts. These exceptions generally come into play when the state proceedings are considered a legal nullity, and thus, are void ab initio. See *Kalb v. Feuerstein*, 308 U.S. 433, 438–40, 60 S.Ct. 343, 84 L.Ed. 370 (1940)(holding judgment in violation of automatic stay void); but see *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir.1989)(finding violation of automatic stay voidable rather than void ab initio). The Eleventh Circuit has recognized an important limitation to the *Rooker–Feldman* doctrine when the plaintiff has no "reasonable opportunity to raise his federal claim in state proceedings." See *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir.1983), cert. denied, 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984); see also *Biddulph v. Mortham*, 89 F.3d 1491, 1495, n. 1 (11th Cir.1996). In such an instance, the federal claim is not considered to be "inextricably intertwined" with the state court's judgment. *Id.* Furthermore, the Sixth Circuit recognizes an exception to *Rooker–Feldman* when the state court judgment was "procured through fraud, deception, accident, or mistake...." *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc.* (*In re Sun Valley Foods Co.*), 801 F.2d 186, 189 (6th Cir.1986). Moreover, it has been determined that the *Rooker–Feldman* rule does not bar a suit in federal court brought by an individual who was not a party to the state court action. See *Snider v. City of Excelsior Springs, Mo.*, 154 F.3d 809, 812 (8th Cir.1998)(citing *Johnson v. De Grandy*, 512 U.S. 997, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)); see also *United States v. Owens*, 54 F.3d 271, 274 (6th Cir.), cert. dismissed, 516 U.S. 983, 116 S.Ct. 492, 133 L.Ed.2d 418 (1995). The Seventh Circuit has also recognized an exception

to *Rooker–Feldman* when a federal statute specifically authorizes federal review of a final state court decision. See *Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir.1996); 28 U.S.C. §2241(1999)(authorizing federal district courts to review state court decisions in habeas corpus proceedings).

 Here, the Court is asked to accept the reasoning which has been recognized by the Sixth Circuit as an exception to *Rooker–Feldman* based upon a judgment being "procured through fraud, deception, accident, or mistake...." *Sun Valley Foods Co.*, 801 F.2d at 189. The Complaint addresses allegations of the extrinsic fraud which has occurred in the conspiracy and the fraudulent compromise of the settlement agreement. The facts are to be taken as true, and the allegations are not fair. The Defendants rely on the fact that state court proceedings have generated a summary judgment and other orders and raising the *Rooker-Feldman* bar. The conduct of the Defendants and the specific extrinsic fraud which they engaged were never argued below. There is persuasive authority that the extrinsic fraud exception is available, *Sun Valley Foods Co.*, supra; *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir.2004)("Rooker–Feldman therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court...."). There is no Eleventh Circuit <u>precedent</u> published which has decided the issue, so this Court is free to adopt the exception. Further, there was no opportunity to raise the federal claims in the state court due to the extrinsic fraud precluding the claims through the deception and lies perpetrated on OFER. *Biddulph v. Mortham*, 89 F.3d 1491, 1495, n. 1 (11th Cir.1996). Accordingly, the *Rooker-Feldman* doctrine is inapplicable.

 Furthermore, it is undisputed the NOC recorded in 2015 is still valid, so is the building department records (PERMITS), as a result the CDI lien (now assigned) has a top priority.

<u>Jurisdictional Consideration</u>

Finally, despite the presumption of correctness and validity which attaches to the bankruptcy order which the Magistrate relies, there is still the matter that the Magistrate cannot rely of the rulings in light of the contradicting reasoning by Judge Isicoff. The ruling is called into question as proper support. The limited jurisdiction is clear for the bankruptcy court. It cannot rule on matters outside the context of estate property or any interest therein. The face of the order shows just that. Ownership of the Drexel Property was adjudicated and found not to be property of the estate. Yet, matters specific to non-parties and non-estate property was adjudicated by the bankruptcy court and are apparent on the face of the order of the bankruptcy summary judgment. This is even supported by the admissions of the bankruptcy court whereby Judge Isicoff stated as follows,

> **"THE COURT**: What I said is I didn't rule, because it wasn't before me. The only thing I said with respect to the CDI lien, and I clarified it here, is, if you are correct and I'm wrong --although if I change my mind I guess that makes me right -- but if the property at issue is property of DRO, then the filing of that claim of lien was a stay violation and it is void. Not voidable, void. That's what the law says. Any action taken in violation of the automatic stay is a void act. It doesn't count. It's a nullity. *If this is not property of the estate, as I have as of this point ruled, then it wasn't a stay violation, and you can argue about the validity in another court, because CDI's lien is not in front of me, except on that one discrete issue, okay?*
> **MR. OFER**: This was not property of the estate, it was a Drexel construction agreement that is in question. So this was not property of -- the CDI lien was not property of the estate. It was based on an agreement with Drexel.
> **THE COURT**: No, no, no. You misunderstood me. If the Drexel property is property of DRO, if I reverse myself or if it's property of DRO, then filing that claim of lien was a violation of the automatic stay and it is a void nullity. It has no meaning whatsoever. *If the property is Ajar's, then the filing of the claim of lien was not a stay violation. **Whether it's valid or not is an issue for another court.**"*

As the context of the transcript reflects, the validity of the CDI claim of liens were never properly before the bankruptcy court to begin with. So the Magistrate's presumption that the CDI liens are

void and the bankruptcy court ruled on their validity is refuted by the record of the bankruptcy proceeding on the reconsideration filed on the summary judgment. It is also important to note that the validity of the CDI liens is also confirmed by the record of this case. Ofer brought action to foreclose within 1 year of the filing of the March 2024 liens.

Just for clarity, construction Law place no duty on a contractor to produce any invoices for work done, as justification can be found by building department records (permits). As long as an owner and contractor agree that the work was completed satisfactorily, then no third party can request any invoice.

<u>Conclusion</u>

Based on the foregoing, the Defendants motion to dismiss the Corrected Complaint should be denied and this objection sustained based on the grounds asserted, or any other relief the Court deems appropriate.

Submitted by,

/s/_____
Raz OFER
c/o 3701 DeGarmo Lane
Coconut Grove, FL 33133
Raz.OFER2@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this ___29___ day of January 2025, a true and correct copy of the foregoing was served by email on all parties of record as required by the Federal Rules of Civil Procedure.

Submitted By,

/s/ _____
Raz OFER
c/o 3701 DeGarmo Lane
Coconut Grove, FL 33133
Raz.OFER2@gmail.com